Brett Lewis, Esq. (*pro hac vice*)
*Brett@iLawco.com*
Michael Cilento, Esq. (*pro hac vice*)
*Michael@iLawco.com*
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326


Ji-In Lee Houck (SBN 280088)
*jiin@houckfirm.com*
**THE HOUCK FIRM**
16501 Ventura Blvd, Suite 400-199
Encino, CA 91436
Tel: (888) 446-8257


*Attorneys for VPN.COM LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VPN.COM LLC,<br>                              *Plaintiff*,<br><br>          vs.<br><br>GEORGE DIKIAN et al.<br><br>                              *Defendants*. | Case No: 2:22-cv-04453-AB-MAR<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**<br><br>**[Declaration of Michael D. Cilento, Esq. and exhibits submitted herewith]** |

**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

1

1

## Introduction

2        Plaintiff VPN.COM LLC ("VPN"), through undersigned counsel,

3 submits this Response in Opposition to Defendant Dikian's emergency ex-parte

4 application seeking a temporary restraining order preventing VPN from filing a

5 first amended complaint to correctly identify and name Defendant "Dikian."

6 Defendant has waited nearly a year to bring this request to the Court, which

7 belies the necessity for any emergency relief – VPN could have filed a motion

8 to amend the complaint naming Dikian's true identity at any point. The fact that

9 VPN did not do so yet, for reasons explained below, does not create an

10 emergency warranting the grant of a temporary restraining order. Nor has

11 Defendant provided any good reason why he should be allowed to proceed in

12 this case anonymously or pseudonymously, nor demonstrated why this is an

13 unusual case warranting such relief.

14

## Background

15       1.     VPN initiated this action after VPN was unambiguously defrauded

16 in connection with two domain name sale transactions.

17       2.     VPN sued "George Dikian," because that was believed to be the

18 identity of the individual that committed the fraud.

19

20

21

**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

2

3.      After more of VPN's own, early investigation, it was suspected that "George Dikian" may in fact be a fake identity. VPN also discovered an individual that it believed could be the true identity of "George Dikian," but VPN could not fully confirm this.

4.      Defendant Dikian, and his counsel, for their part, refused to confirm, either formally or informally, the true identity of Defendant Dikian for nearly a year after the case commenced.

5.      Only after *several* threats of a motion to compel, the first being via letter on February 3, 2023, *see* **Exhibit A** to the Cilento Dec. attached hereto, and after more evidence came in that pointed to the true identity, did "George Dikian" finally on May 8, 2023, disclose his true identity to VPN.

6.      Undersigned counsel also informed Dikian's counsel several times that if Dikian wished to attempt to proceed in the action anonymously, he should file a formal motion with the Court. This was also stated as early as February 3, 2023, in **Exhibit A**. Dikian never moved for a protective order.

7.      Even before Dikian would confirm his true identity, however, VPN informed Dikian via email on April 26, 2023, that VPN would like to meet and confer regarding a planned motion for leave to file an amended complaint in the action to, *inter alia*, name the identity that VPN strongly believed was Dikian's

**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

3

1    true identity, and to add in certain other allegations, including that of a previous

2    victim of Dikian. *See* **Exhibit B**.[1]

3        8.    In this April 26 meet-and-confer email, VPN sent Dikian a

4    redlined proposed amended complaint that VPN intended to file. *See id*. After

5    receiving the proposed amended complaint, Dikian specifically asked VPN

6    through email from counsel to hold off on filing the amended complaint until

7    after the mediation scheduled for June 30, 2023, as it would make the chances

8    of a successful mediation greatly increase. *See* **Exhibit C**.

9        9.    VPN agreed to hold off on filing the motion to amend, and the

10   parties submitted a stipulation to extend the amended pleadings case deadline to

11   July 28, 2023, and other certain deadlines were extended, and the Court So

12   Ordered the stipulation on May 3, 2023. *See* ECF 45.

13       10.   Unfortunately, the parties could not settle at the mediation.

14   However, at Dikian's explicit request at the mediation and through an email

15   from counsel for Dikian, the parties scheduled and held follow-up talks to see if

16   a resolution could be possible. *See,* e.g., ECF 48, Mediation Report (reporting

17   that follow-up talks were being scheduled).

18

19   _____

     [1] VPN has redacted Dikian's true identity in the Exhibits, in order to allow this Court to
20   meaningfully rule on the current application.

21   **RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-**
     **PARTE APPLICATION FOR A TRO**
     4

11.     Unfortunately, those talks too were unsuccessful, and did not conclude until the last conversation between the parties via phone on July 14, 2023.

12.     During the time from the mediation through to the conclusion of the further talks (*i.e.,* from June 30 – July 14), the parties, through counsel, had been negotiating a stipulation to extend case deadlines, including the time to hear a motion to amend pleadings, since VPN had again agreed to hold off on filing the motion to amend until the talks concluded.

13.     On July 10, 2023, counsel had a formal meet and confer call on several issues, including the need to stipulate to extend certain case deadlines, including the deadline for motions to amend pleadings. Undersigned counsel sent a memorialization email of this meet and confer call to Dikian's counsel. *See* **Exhibit D**.

14.     However, on the night of July 12, 2023, essentially a day before the settlement talks fully broke down on July 14, Dikian's counsel sent an email withdrawing consent to extend the deadline for an amended pleadings hearing date, and informed undersigned counsel that the time to confer on a motion to amend pleadings is "long passed." *See* **Exhibit E**.

---

**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

15.     Accordingly, VPN's counsel informed Dikian's counsel that contrary to him thinking he could simply induce VPN into delaying the filing of its amended complaint, and then rug pull a stipulation and dupe VPN into not being able to properly name Dikian's true identity, VPN would be moving by ex-parte application for leave to file an amended complaint. Naming Dikian's true identity should not be controversial – as the real party in interest, and a party accused of using a fake identity to defraud multiple victims, it is normal and routine to sue Dikian by his real name.

16.     In response to VPN informing Dikian that VPN planned to submit such application this week, and that VPN would give Dikian exact notice thereof, Dikian then submitted the current application for a TRO and for leave to file a motion for a protective order to proceed anonymously or pseudonymously.

17.     VPN opposes the belated ex-parte application for a TRO and believes that the Court should not even entertain a motion for a protective order.

## **Argument**

18.     Dikian is not *entitled* to proceed in this action anonymously or pseudonymously.

19.     Dikian's only two arguments to do so are that (i) Dikian has used a long-standing fake identity wrongfully to conduct business, violate ICANN rules, and defraud people, and (ii) Dikian has a few million dollars' worth of "valuable assets." Neither of these arguments warrants allowing Dikian to proceed anonymously.

20.     As a preliminary matter, there is no urgency supporting the grant of a temporary restraining order. This case has been ongoing for over a year. If maintaining the secrecy of Dikian's identity was truly an emergency, then Dikian should have moved for a protective order long ago. Counsel for VPN encouraged Dikian to do just that, but Dikian chose not to take any steps towards shielding his identity – until now.

21.     Additionally, the Ninth Circuit has made clear that use of a pseudonym should only be permitted occasionally and in "unusual" cases. *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) ("As a general rule, the identity of the parties ... should not be concealed except in an unusual case, where there is a need for the cloak of anonymity.") (internal citation and quotation marks omitted).

22.     Here, there is no reason for Dikian to remain pseudonymous. The application states that Dikian has been "targeted by criminals," but Dikian's

1   presents no evidence of this, and other evidence points strongly to Dikian being

2   the criminal with multiple victims. Dikian has not provided any police report,

3   any complaint to an email service provider, any lawsuit, any contemporaneous

4   steps taken to investigate the alleged criminality he is now claiming he has

5   experienced. – nothing that could show he has actually been targeted by

6   criminals at all, let alone to a point where it would require proceeding

7   anonymously.

8        23.   Nor has Dikian provided any evidence of potential future harm or

9   retaliation. Severity of the potential threatened harm to the movant is one of the

10   most important factors in determining whether to allow a litigant to proceed

11   anonymously. *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est*., 596

12   F.3d 1036, 1043 (9th Cir. 2010). Here, there is nothing to suggest any

13   threatened harm, let alone severe harm – and certainly no greater harm than *any*

14   *other litigant* accused of fraud.

15        24.   As to the "expert reports" that Dikian claims he will use to

16   somehow either exonerate him or show he's been the target of criminality –

17   they will not show either. Suffice it to say for now that the expert reports Dikian

18   has produced in this action are deeply flawed in methodology, technique, and

19

20

21        **RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

1   substance, such that they are likely to be excluded by this Court on VPN's

2   planned *Daubert* motions.

3        25.    In any event, there is no logical reason why the Court should

4   consider evidence for likelihood of success on the merits of the underlying

5   claims in determining whether a party should proceed anonymously, and the

6   expert reports have nothing to do with future, threatened harm. In fact, as

7   Dikian alleges now, he was targeted while he was using the fakie identity

8   "George Dikian" not his real identity.

9        26.    Dikian's other argument – that he should be allowed to proceed

10  anonymously because he has "valuable assets" – is not something that the Court

11  should even entertain. If anyone who has "valuable assets" could proceed in

12  litigation anonymously, that would completely undermine the fairness of the

13  justice system.

14       27.    On the other hand, if Dikian were allowed to proceed

15  anonymously, VPN and the public would both be severely prejudiced. First,

16  VPN needs to name Defendant by his correct name in order for VPN to be able

17  to properly litigate the case, including by being able to secure a judgment

18  against the real identity of Dikian. "George Dikian" is a fake identity, and

19  securing a judgment against it is of no value.

20

21       **RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

9

28.      Second, the public has a right to know Dikian's true identity. The allegations in the Complaint sound in fraud. Dikian has been using a fake identity, and has multiple, documented victims, in part *because* of the use of the fake identity. The public deserves to know who the actual person is behind this fake identity and behind these frauds. It will also help to prevent Dikian from being able to defraud others in the future, and help prevent others from falling victim to scams using the Dikian identity

29.      Even under Dikian's version of the case, Dikian's defense boils down largely to an argument that he was grossly negligent in allowing his fictitious identity be used to scam multiple victims out of hundreds of thousands of dollars– even well after he was allegedly aware that such scams were being perpetrated under his name. Even if that were true, which the evidence seriously belies, the public is entitled to know Dikian's real identity so that others can decide – based on as much transparency as possible – whether and on what terms to transact with "Dikian."

**Conclusion**

30.      VPN needs to amend its Complaint to properly name Dikian's true identity, as well as to add additional allegations gleaned from discovery, including allegations regarding other victims of Dikian.

---

**RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-PARTE APPLICATION FOR A TRO**

1      31.    Dikian is not entitled to a protective order allowing him to proceed

2   anonymously or pseudonymously, as such application is untimely, he cannot

3   show any harm, and because it would prejudice VPN and the public.

4      32.    Because Dikian withdrew consent to stipulate to further extend the

5   case deadlines, including the amended pleadings hearing (current deadline of

6   July 28, 2023), VPN needs to move by ex parte application to meet that

7   deadline.

8      33.    VPN informed Defendant's counsel that it planned to file its ex-

9   parte application for leave to file an amended complaint this week, and VPN

10   was prepared to do so today, but will hold off on doing so until the Court rules

11   on this current application.

12      Dated: July 19, 2023                    By:    *Michael Cilento*

13                                                      Michael Cilento (*pro hac vice*)

14                                              Brett E. Lewis
                                                Michael D. Cilento
15                                              **LEWIS & LIN, LLC**

16                                              Ji-In Lee Houck (SBN 280088)
                                                **THE HOUCK FIRM**

17                                              *Attorneys for VPN.COM LLC*

18

19

20

21   **RESPONSE IN OPPOSITION TO DEFENDANT DIKIAN'S EMERGENCY EX-
     PARTE APPLICATION FOR A TRO**
     11