UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-04453-AB-MAR | Date: | July 20, 2023 |
|---|---|---|---|

| Title: | *VPN.com LLC v. George Dikian et al.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER RE: Defendant Dikian's Emergency Ex Parte Application for a TRO (Dkt. No. 50)

Before the Court is Defendant's Ex Parte Application for Temporary Restraining Order (Defendant's Application, Dkt. No. 50), filed on July 18, 2023. Therein, Defendant George Dikian explains that "Dikian is a professional alias and pseudonym that has been used by a defendant real party in interest ("RPI") for some 25 years, in order to protect RPI's privacy and property. . ." (Application at ¶ 3.) Defendant avers that "Plaintiff has known the real identity of Defendant RPI since at least as early as December 15, 2022. . ." (*Id.* ¶ 4.) Defendant concludes:

> [Dikian] is entitled to keep its true identity confidential, in order to maintain [its] longstanding professional alias and pseudonym which has been used privately and reputably in the domain name industry for more than 20 years.

> . . .

> [Defendant's] valuable domain name properties are a target of criminals, and [] the extra layer of protection provided by [Defendant's' alias] helped to keep the criminals away from stealing those properties from [Defendant] directly.
>
> [Defendant] will explain this further, and will provide the expert reports and a sworn Declaration to the court in support of [Defendant's] Motion to Proceed under Pseudonym, which will be filed no later than Friday, July 21, 2023.

(*Id.* at ¶¶ 10, 11.)   Defendant explains that it seeks emergency relief because, "in [an] email yesterday . . ., Plaintiff's counsel has threatened to file an *ex parte* application 'this week' for leave to file an amended complaint to, among other things, name the true identity of Dikian and RPI . . ."   (*Id.* ¶ 13.)   The problem with this claim is that Plaintiff's counsel first raised (and objected to) Defendant's desire to proceed under a pseudonym not yesterday, but rather at some point *before* February 3, 2023.   More than five months ago, Plaintiff's counsel wrote:

> [W]e must now make a formal demand that your client amend their Rule 26 Disclosures and disclose their identity immediately.   As we have explained to you previously, if your client wishes to proceed in this action anonymously, you will have to file a formal motion for that relief.   As also explained, even if you were successful on that motion, that would only allow your client to proceed anonymously on the public docket, not anonymously as to the Plaintiff.

(Dkt. No. 51-2 Pl. Ex. A.)   Then, again, on April 26, 2023, Plaintiff's counsel wrote: "[I]f [Dikian/RPI] wanted us to hold off on filing in order to discuss any possible resolution to the case before [Dikian/RPI] is named publicly . . . then we could do so.   But again, because of the tight timing, we would need your client's agreement . . . and then we could hold off on filing, if desired."   (Dkt. No. 51-3 Pl. Ex. B.)

In short, the notion that Plaintiff's counsel ambushed Defendant with a last-minute threat to reveal their identity is flagrantly contradicted by the record.   Plaintiff advised Defendant to file a motion to proceed under a pseudonym at least as early as February; Defendant chose not to do so.   Regardless, Defendant has, of course, known that they are proceeding under a pseudonym since the moment this case was filed.   And Defendant knows (or should know) that "as a general rule, the identity of the parties . . . should not be concealed except in an unusual case where

there is a need for the cloak of anonymity." *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) (cleaned up).  Defendant did not need Plaintiff to tell them to file a motion to know that this was what they needed to do.  But Plaintiff did tell them, and still, they did not.

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting that a TRO is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").  As such, an applicant for a TRO is required to demonstrate "immediate and irreparable injury, loss or damage." Fed. R. Civ. P. 65(b); *see also Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction.  *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test or an alternative sliding scale test.  *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).  Under the traditional test, a party must show: "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)."  *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).  Where a party demonstrates that a public interest is involved, a "district court must also examine whether the public interest favors the plaintiff."  *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

Alternatively, a party seeking injunctive relief under Fed. R. Civ. P. 65 must show either (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party.  *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Roe*, 134 F.3d at 1402 (quoting *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992); *accord Sun Microsystems*, 188 F.3d at 1119).  "Thus, 'the greater the relative hardship to the moving party, the less probability of success

must be shown." *Sun Microsystems*, 188 F.3d at 1119 (*quoting Nat'l Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)).

Defendant's Application does not meaningfully contend with the factors Courts are instructed to consider in analyzing a TRO.  Indeed, it is impossible to conclude that Defendant is likely to succeed on the merits given that its Application says of the merits: "RPI will explain this further, and will provide the expert reports and a sworn Declaration . . . [when it files its] Motion to Proceed under Pseudonym. . ." (Application ¶ 11.)   And Defendant's confusing and vague contention that their "domain name properties are a target of criminals" such that a pseudonym is necessary likewise does not allow the Court to meaningfully understand the nature of the purported irreparable harm.   (*Id.* ¶ 10.)

Thus, the Court has no choice but to **DENY** Defendant's Application.

However, the Court recognizes that once Defendant's genuine identity is revealed, the value of its pseudonym evaporates and any harm that may flow becomes (potentially, at least) permanent.   Defendant's Application does not come close to demonstrating an entitlement to proceed under a pseudonym.   However, out of an abundance of caution, the Court will allow Defendant to file a Motion so as to fully articulate any arguments it may have in support of such relief.   Accordingly, the Court **ORDERS** the following:

- Defendant is **ORDERED** to file a Motion to Proceed under a Pseudonym on or before July 21, 2023.   Plaintiff may file an Opposition on or before July 28, 2023, and Defendant may file a Reply on or before August 4, 2023.

- Plaintiff is **ORDERED** to refrain from revealing Defendant's true identity until the Court rules on Defendant's Motion.

- Plaintiff will be permitted to file a Motion seeking leave to file an Amended Complaint within seven (7) days of this Court's Order on Defendant's Motion.

    **IT IS SO ORDERED**.