1  Michael L. Rodenbaugh (California Bar No. 179059)
2  Jonathan Frost (California Bar No. 273189)
   RODENBAUGH LAW
3  548 Market Street – Box 55819
4  San Francisco, California 94104
   Phone: (415) 738-8087
5  Email: mike@rodenbaugh.com
6
   *Attorneys for Defendant*
7  *sued as George Dikian*

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10 | VPN.COM LLC,                    | CASE NO. 2:22-cv-04453-AB-MAR
11 |            *Plaintiff*,         |
12 |                                 | **DEFENDANT'S MOTION TO PROCEED UNDER PSEUDONYM**
   |     vs.                         |
13 |                                 |
14 | GEORGE DIKIAN et al.            |
15 |            *Defendants*.        |

17        Pursuant to this Court's Order dated July 20, 2023 (Dkt. No. 52), Defendant
18 hereby submits this Motion to Proceed Under Pseudonym.

19                          **BACKGROUND**

20        On June 29, 2022, Plaintiff filed the operative Complaint in this matter,
21 naming George Dikian, Qiang Du and John Doe as Defendants. (Dkt. No.1). The
22 Complaint alleges that "Defendants used, *inter alia*, the reputation of Dikian, a
23 well-known domain name investor and reseller, as well as a … website that posed
24 as an escrow service, as the linchpins of their scheme to convince [Plaintiff] VPN
25 that VPN was brokering legitimate transactions between Dikian and Du." (*Id.*, #2).
26        In fact, Dikian is a professional alias and pseudonym that has been used by
27 the Defendant real party in interest (hereinafter "RPI") for some 25 years, in order
28

to protect RPI's privacy and property, as RPI is the owner of many extremely valuable domain name properties.  (Dikian Declaration, #1-3).  Those properties include all of the domains listed in the Complaint, including 89.com which Plaintiff valued at $4.4 million (*Id.,* #24), and a list of 95 numeric domains which Plaintiff valued at $12.5 million (*Id.*, #39-40 and Annex A).  RPI also owns hundreds of other similarly valuable domains not mentioned by Plaintiff.  (*Id.*, #2).

**Domain Theft Is a Rampant and Serious Problem, of Great Concern to RPI**

Such valuable domain name assets are frequently the targets of hackers and are frequently stolen or, in industry parlance, "hijacked".  As early as 2005, the ICANN[1] Security and Stability Advisory Committee ("SSAC")[2] investigated such incidents and produced a report warning about their frequency and severity.  "To illustrate the severity of the domain hijacking problem, this report examines some incidents in detail….  To emphasize that these are not isolated incidents, we mention other incidents and their consequences to registrants in table form." (Rodenbaugh Decl., Ex. A, *SSAC Report: Domain Name Hijacking*, July 12, 2005, p.8).  Today, it remains such a prevalent problem that there is a cottage industry of US law firms claiming to specialize in recovering stolen domain names.[3]

---

[1] Internet Corporation for Assigned Names and Numbers (`ICANN'), was formed to assume responsibilities for managing the allocation of Internet Protocol numbers and the domain name system.  *E.g., Solid Host, NL v. NameCheap, Inc*., 652 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009) ("ICANN has four mandates. . . . First, ICANN bears responsibility for overseeing the infrastructure of the Internet….")

[2] Rodenbaugh Decl., Ex. A, p.4:  "[SSAC] offers independent advice to the ICANN board, the ICANN staff and the various ICANN supporting organizations, councils and committees as well as to the technical community at large."

[3] *See, e.g.,* Rodenbaugh Decl., Ex. B, Finnegan, *Domain Name Theft: Knowing Where to Turn*, Feb. 27, 2015 ("Domain name theft is a constant concern and threat for brands"); Revision Legal, *Domain Theft Causes of Action to Recover Stolen Domain Names*, Feb. 11, 2015 ("the availability of legal remedies is much less expansive than the current domain name theft problem"); Traverse Legal, *I Want*
(…continued)

Plaintiff itself published an article in December 2022 entitled *Domain Name Hijacking, Reverse Hijacking, and What To Do If Your Domain Name Is Stolen*. (Rodenbaugh Decl., Ex. C). The article begins:

> Good domain names are always valuable assets with many selling for thousands or even millions of dollars. This alone is a sufficient reason for malicious actors to target domain names for attack and often motivates domain name hijacking.

Plaintiff further described the common threat; indeed, exactly what happened already to Defendant in this case:

> Email Hacking: If someone can access part of your login data it is likely that they will be able to access your registrant account and steal your domain names. A person might steal your email with social engineering techniques and use this to access the account or they could steal your email in other ways. This is one of the biggest reasons why Domain Name hijacking is taking place and becoming usual for businesses.

Plaintiff further acknowledged that "there are many reasons that domain name hijacking is more dangerous than many forms of ordinary theft." (*Id.*). Indeed, in one widely reported case just a few years ago, a man was convicted of breaking into a home in Iowa, then holding a domain owner at gunpoint while forcing him to transfer a domain name that the thief valued at less than $20,000. (Rodenbaugh Decl., Ex. D). Defendant RPI's domain portfolio is valued at exponentially more than that (*see, e.g.,* Complaint, #24, 39-40), and so Defendant

---

*My Domain Name Back, Recovering from Domain Name Theft*, Dec. 18, 2013 ("Stolen domain names and domain theft are all too common."); Mughal Law Firm, *Domain Name Hijacking and Domain Theft*, July 14, 2020 ("Did you know you can easily be targeted for domain name theft?"); Klemchuk, https://www.klemchuk.com/domain-theft ("we provide domain theft recovery services"); Kronenberger Rosenfeld, https://kr.law/practice-areas/domain-hijacking ("It pays to have a domain hijacking expert in your corner."); Greenberg & Lieberman LLP, https://aplegal.com/domain-name-theft-lawyers/ ("domain theft and stolen domain names are all too common").

RPI (an elderly grandfather, with a wife of 40 years) reasonably fears for personal and family safety, and for loss of valuable properties. (Dikian Decl., #1,3, 7-9).

### Defendant Already Has Been Victimized by Criminal Hackers, and Reasonably Fears It Will Happen Again If His True Identity Is Revealed

Defendant has retained two expert witnesses who each independently have concluded that the Dikian email account (g.dikian@yahoo.com) was compromised by unknown criminals. (Rodenbaugh Decl., Ex. E and F).[4] Rod Rasmussen, the Chair of ICANN's SSAC since 2017, states unequivocally his opinions that 1) "Business Email Compromise Fraud is extremely common"; and 2) "evidence revealed by internet service records and email records proves to a reasonable certainty that the gdikian@yahoo.com Yahoo! Mail address was compromised by an unauthorized actor." (*Id.*, Ex. E, p.1-2). Mark Seiden, a member of ICANN's SSAC since 2007, states unequivocally his opinion that "The g.dikian@yahoo.com account (Dikian's working account) was compromised on or before 1/28/2022 by currently unknown malefactors." (*Id.*, Ex. F, p.2).

In light of the Dikian email compromise, Defendant reasonably believes that valuable domain names would have been stolen if not for use of the Dikian pseudonym. (Dikian Decl., #7, 9). The criminal hackers that accessed the Dikian email account could not also access RPI's domain registrar account, as the latter account is created under and tied to RPI's real identity – as it must be, since regular payments are made to the registrar in order to maintain registrations of RPI's domain properties. (*Id.*, #8). The extra layer of security provided by the Dikian alias has been critical to protecting RPI's valuable properties from theft. (*Id.,* #9). If the Court requires Defendant to reveal the true identity of Dikian publicly, then RPI is likely to become a direct target of domain name thieves in the future. (*Id.*,;

---

[4] These experts both go on to explain in detail their opinion that the hackers, after compromising the Dikian email account, then were able to perpetrate the fraud alleged by Plaintiff. Plaintiff did not disclose any expert opinions in this case.

1 *see also, supra,* n.3, 4 and Rodenbaugh Decl., Exhs. A-F); *see also*, Dkt. No. 52, Order ("the Court recognizes that once Defendant's genuine identity is revealed, the value of its pseudonym evaporates and any harm that may flow becomes (potentially, at least) permanent").

Moreover, as Plaintiff acknowledges in its Complaint, the Dikian alias – rather than RPI's true name – is of great commercial value to RPI. Plaintiff states that it was the "well-known reputation of Dikian" that lent authenticity such that Plaintiff wished to broker the alleged fraudulent transactions. (Complaint, #2, 18). Defendant RPI has used the well-known Dikian alias in his domain investment and reselling business for some 25 years, without ever receiving any complaint from anyone until the Dikian email account was compromised. (Dikian Decl., #10-11). If the court forces the public reveal of Dikian's true identity, then the value of that pseudonym will be completely destroyed, and his personal reputation will be irreparably damaged. (*Id.*, #11; *see also,* Dkt. No. 52).

Defendant swears that he had nothing to do with the alleged fraud against Plaintiff – that he had none of the alleged communications with Plaintiff, had never heard of the "Intermediar" escrow service, never used a VPN, and has never owned or received any bitcoin. (*Id.*, #4-5). Indeed, the fact that Defendant owns so many such valuable properties, and has such a reputatation in the domain name industry, is an elderly gentleman with a wife of 40 years, all provide very strong circumstantial evidence that he had no involvement in the alleged fraud which could possibly justify the "outing" of his longstanding professional alias, and the embarassment that will irreparably and certainly cause to both his personal and professional reputations. (*See, id.,* #11).

**<u>Plaintiff Suffers No Prejudice from Defendant Proceeding Under the Alias</u>**

Plaintiff has known the real identity of Defendant RPI since at least as early as December 15, 2022, when Plaintiff's counsel sent a third-party subpoena seeking information about RPI, using RPI's real name. (Rodenbaugh Decl., #7).

Defendant's Motion to Proceed Under Pseudonym
Case No. 2:22-cv-04453-AB-MAR

5

On January 31, 2023, Plaintiff named RPI in Plaintiff's Initial Disclosure. (*Id.*, #8). Plaintiff received a copy of RPI's former Nevada driver's license in response to a subpoena to Escrow.com, at least as early as February 27, 2023. (*Id.*, #9). On March 3, 2023, Plaintiff's counsel sent a letter to Defendant's counsel, stating "we will be seeking leave to amend our complaint to … name [RPI] as a party." (*Id.*, #10). On May 8, 2023, Defendant signed RPI's name upon the sworn Verification of RPI's timely responses to Plaintiff's interrogatories, wherein RPI's real identity was stated in response to Interrogatory #1. (*Id.*, #11). On July 14, 2023, Defendant RPI produced a copy of RPI's current Florida driver's license to Plaintiff's counsel, in response to Plaintiff's requests for production. (*Id.*, #12).

Thus, Plaintiff's discovery and trial preparation efforts have not been hampered in any way by Defendant proceeding under the Dikian pseudonym to date – for more than nine months since Defendant was served. Plaintiff has sent at least seven third-party subpoenas seeking confidential information about RPI, including to Microsoft, Yahoo!, RPI's domain name registrar (Tucows), and RPI's domain escrow service (Escrow.com). (Rodenbaugh Decl., #13). All companies responded to Plaintiff's subpoenas without objection.[5] (*Id.*). So, it is clear that Plaintiff has known RPI's true identity for at least eight months, and that Plaintiff has had no difficulty obtaining evidence relating to RPI's true identity, both from RPI and from third parties.

The parties negotiated and the court entered a Protective Order "to adequately protect information the parties are entitled to keep confidential." (Dkt., No. 43, Sec. II.A). Pursuant to that Order, the agreement of counsel in this matter from February up to July 18, 2023, and the Court's Order of July 20, 2023 (Dkt. No. 52), RPI's identity has not been revealed in the public record to date.

---

[5] Except as to one subpoena subject to Defendant's pending Motion to Quash. C.D. Cal. Case No. 2:23-mc-00087-SPG-KS (subpoena to Bodis LLC).

Until July 19, Plaintiff never indicated any prejudice whatsoever arising from that state of affairs. In its opposition to Defendant's *ex parte* application, Plaintiff alleged that its only prejudice is that it must be able "to secure a judgment against the real identity of Dikian." (Dkt. No. 51, #27). But, Defendant expressly agrees that in the unlikely event that any judgment is entered against Dikian, and any appeal is exhausted, then the court at that time would enter final judgment against RPI. (Dikian Decl., #12). This point is further discussed *infra*. Plaintiff has no argument or evidence to suggest that Dikian's true identity needs to be revealed at any other time, or for any other purpose in this litigation.

## ARGUMENT

The Ninth Circuit allows a party to proceed through litigation under a pseudonym "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *E.g., Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). A party may be permitted to use a pseudonym "when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1068. "It may never be necessary, however, to disclose the anonymous parties' identities to nonparties to the suit." *Id*. The decision whether to permit a party to proceed pseudonymously is a matter of a court's discretion. *See id.*

In this case, there has been and will be no prejudice whatsoever to Plaintiff, and there is no public interest in knowing Dikian's true identity unless and until Plaintiff proves that Dikian did anything wrong. Thus, RPI's personal and commercial need to maintain the Dikian alias massively outweighs Plaintiff's and the public's non-existent interest.

**Defendant Has Very Strong Need to Maintain Viability of the Alias**

Defendant RPI has used the Dikian alias for some 25 years in effort to protect valuable domain assets and personal and family safety. (Dikian Decl., #1,

3). As two experts have found, criminals already have targeted RPI in the very same fraud that allegedly has harmed Plaintiff. (Rodenbaugh Decl., Ex. E, F). Such email compromise fraud, and domain theft, are rampant and extremely damaging. (*Id.*, Ex. A-F). In at least one instance in recent years, there has been a home invasion and gunpoint robbery of a domain name owner. (*Id.*, #D). So, Defendant maintains a reasonable fear that he will be targeted again, perhaps with much more damaging effect, if his real identity is outed. (Dikian Decl., #7-9). Moreover, the commercial value in the hard-earned reputation of the alias would be completely destroyed if Dikian's underlying identity is revealed. (*Id.*, #11). There would be no reason for anyone to ever deal with Dikian again. Finally, RPI's personal reputation will be irreparably tarnished if his true identity is tied to Plaintiff's unproven and outlandish allegations of fraud. (*Id.*).

Most of the case law involves plaintiffs with more obvious personal and reputational danger at stake, such as sex-abuse victims. In the *Advanced Textile* case the plaintiffs were foreign garment workers with a reasonable fear of deportation to China. But the Ninth Circuit recognized in that case that economic harm can be sufficient to support anonymity in civil litigation. 214 F.3d at 1070 (holding that the District Court "erred in concluding that anonymity can never be used to shield plaintiffs from economic injury"; "plaintiffs do not need to prove that they face a danger of physical injury").

In another case, defamation plaintiffs were allowed to proceed anonymously because their personal and professional reputations had been shielded by pseudonyms. The court found:

> In this case, Plaintiffs … do not allege fear of retaliatory physical injury if their true names are disclosed. The potential injury to Plaintiffs if their true names are publicly disclosed in this lawsuit is the reputational and emotional injury that they will suffer in their private lives, which have so far been shielded by their use of professional pseudonyms. This case differs from any of the foregoing

> cases, or other cases cited by the parties, in that the Plaintiffs are known to the Defendants, and to the romantic novel and musical performance communities in which the allegedly defamatory statements have been published, only by their professional pseudonyms.

*Alexander v. Falk*, No. 2:16-cv-02268-MMD-GWF (D. Nev. Aug. 30, 2017) (Rodenbaugh Decl., Ex. G). The court allowed them to proceed under their aliases because associating their real names with defendant's "salacious allegations" reasonably would cause damage in their personal and professional lives.

The same is true in this case. Plaintiff and the domain name industry only know Defendant by the Dikian pseudonym. The Dikian name has a hard-earned reputation acquired over 25 years of fair dealing in the industry. RPI also has a strong, untarnished personal reputation unrelated to his domain name properties. It would be unfair and irreparably damaging to destroy that reputation in the pseudonym and to damage that personal reputation, merely because Plaintiff wants to do so – for no other purpose than to harass Defendant. Plaintiff blames Defendant for fraud, without having come anywhere near to proving such a claim. Denial of this motion will destroy all value in the pseudonym, and irreparably damage RPI's personal reputation. Therefore, Defendant has a very strong interest in continuing this litigation under the name that Plaintiff allegedly dealt with, and the name that Plaintiff sued.

### **Plaintiff Cannot Prove Any Prejudice From the *Status Quo***

Plaintiff has barely argued that it is prejudiced at all in the litigation. Indeed, Plaintiff sued Dikian. Moreover, Plaintiff has known Dikian's real identity for many months, through confidential information produced in the litigation. Plaintiff has not had any problems getting any discovery from Defendant or from third parties about Defendant RPI.

The fact that Plaintiff has known Defendant's true identity for so long, without hindrance to discovery or trial preparation, indicates that there is no

Defendant's Motion to Proceed Under Pseudonym
Case No. 2:22-cv-04453-AB-MAR

9

1  prejudice to Plaintiff from continuing under the *status quo*.  The "knowledge
2  defendants have of plaintiffs' identities only lessens their claims to be prejudiced
3  by the use of pseudonyms." *Advanced Textile*, 214 F.3d at 1070 n.11; *see also,*
4  *e.g., B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *10 (N.D.
5  Cal. July 30, 2020) ("Prejudice to Defendants is minimal because B.M. will agree
6  to reveal her identity for purposes of investigating her claims."); *Doe v. San*
7  *Joaquin Cty.*, 2018 U.S. Dist. LEXIS 65574, at *2-3 (E.D. Cal. Apr. 17, 2018)
8  (finding "little prejudice to Defendants where Defendants are fully aware of the
9  identity of their adversary"); *Doe v. Mozer*, No. 2:16-cv-00210-KJD-VCF, at *2
10 (D. Nev. June 24, 2016) ("allowing Plaintiff to proceed anonymously creates very
11 little prejudice to Defendant.  The Defendant knows the true identity of the
12 Plaintiff, … and a pseudonym will not affect Defendant's procedural or discovery
13 efforts.") (Rodenbaugh Decl., Ex. H).

14 　　　　Plaintiff has raised only one purported reason that it is prejudiced by
15 Defendant continuing under the pseudonym.  In its opposition to Defendant's *ex*
16 *parte* application, Plaintiff alleged that its only prejudice is that it must be able "to
17 secure a judgment against the real identity of Dikian."  (Dkt. No. 51, #27).
18 However, Defendant expressly agrees that in the unlikely event that any judgment
19 is entered against Dikian, and any appeal is exhausted, then the court at that time
20 would enter final judgment against RPI.  (Dikian Decl., #12).  This has been found
21 to be reason enough to disregard this concern.  *Discopolus, LLC v. City of Reno*,
22 No. 3:17-CV-0574-MMD (VPC), at *2 (D. Nev. Nov. 16, 2017) (finding no
23 prejudice where party "agrees to be bound by this court's orders directed to her
24 pseudonym rather than her legal name, to disclose her true name to the court under
25 seal and to opposing parties and counsel") (Rodenbaugh Decl., Ex. I); *see also,*
26 *e.g., Advanced Textile*, 214 F.3d 1058 (resolving appeal involving pseudonymous
27 parties).
28

**There Is No Public Interest In Revealing Dikian's True Identity Now**

Plaintiff has sued the alias Dikian, alleging that Plaintiff's fraud was caused by actors using the alias Dikian. (Complaint, *seriatim*). Unless and until Plaintiff can prove such allegations, there is no public interest whatsoever in revealing Dikian's true identity. Dikian is not a public figure. Dikian has been operating privately in the domain name industry, under the George Dikian alias, for some 25 years without complaint. (Dikian Decl., #1, 3, 10).

Courts routinely hold that the public interest does not outweigh a party's interest in proceeding anonymously, because the public still has complete access to everything other than the party's name. *See, e.g., Advanced Textile Corp.*, 214 F.3d at 1072, n.11 ("The district court did not explain, and we fail to see, how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case. … For instance, the question whether there is a constitutional right to abortion is of immense public interest, but the public did not suffer by not knowing the plaintiff's true name in Roe v. Wade."); *Doe v. Mozer*, No. 2:16-cv-00210-KJD-VCF, at *2 (D. Nev. June 24, 2016) ("prejudice against the public's interest in knowing the party's true name is insignificant. Party anonymity does not obstruct the public's view of the issues or the Court's performance in resolving them.") (Rodenbaugh Decl., Ex. H); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name.").

In the unlikely event that Plaintiff actually proves its claim and obtains a final judgment, Dikian's real identity would be revealed. (Dikian Decl., #12). That would be sufficient to address any need for the public to know Dikian's true name. *See, Discopolous, supra* (Rodenbaugh Decl., Ex. I).

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the court exercise its discretion to maintain the *status quo*, and allow Defendant to

continue through this litigation under the Dikian pseudonym. If final judgement ever is to be entered against Defendant, then Dikian's true name shall be revealed.

RESPECTFULLY SUBMITTED,

DATED: JULY 21, 2023

RODENBAUGH LAW

By: /s/ Mike Rodenbaugh
Mike Rodenbaugh (SBN 179059)

*Attorneys for Defendant
sued as George Dikian*