Case No. 2:16-cv-02268-MMD-GWF
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

# Alexander v. Falk

Decided Aug 30, 2017

Case No. 2:16-cv-02268-MMD-GWF

08-30-2017

RANDI ALEXANDER and JACKSON YOUNG Plaintiffs, v. KATHRYN FALK, ROMANTIC TIMES, INC., d/b/a ROMANTIC TIMES MAGAZINE, and JANE DOE, AKA "GRACIE WILSON," Defendants.

GEORGE FOLEY, JR. United States Magistrate Judge

**ORDER** Re: Motion to Proceed in [Pseudonym]
**(ECF No. 49)**

This matter is before the Court on Plaintiffs' Motion for Leave to Proceed in Pseduonym (sic) (ECF No. 49), filed on July 6, 2017. Defendants filed their Response (ECF No. 54) on July 11, 2017, and Plaintiffs filed their Response (ECF No. 57) on July 25, 2017. The Court conducted a hearing in this matter on August 4, 2017.

## BACKGROUND

The Plaintiffs, "Randi Alexander" and "Jackson Young," are suing under pseudonyms. "Randi Alexander" is a pen name for an individual romance novelist. "Jackson Young" is a stage name for an individual professional model and country music performer. *Complaint* (ECF No. 1), pg. 1, n. 1. Plaintiffs allege that they have been defamed by Defendants Kathryn Falk, Romantic Times, Inc. and Jane Doe/Gracie Wilson.[1] According to the complaint, Randi Alexander is a renowned author of romance novels and Jackson Young is a well-known model who poses for various depictions of romance *2 novels and themes, and is also an up-and-coming country music entertainer. *Id*. at ¶¶ 18-20. Defendant Wilson is also a romance author. Defendant Falk is a romance novel promoter and the chief executive officer of Romantic Times, Inc. which publishes a magazine specializing in romance novels and related book reviews. Defendant Falk and Romantic Times have substantial involvement and influence in the romance novel market and host the annual RT Booklovers Convention, which was held at the Rio Hotel & Casino in Las Vegas, Nevada between April 12 and 17, 2016. *Id*. at ¶¶ 22-25.

2

> [1] Defendant Jane Doe/Gracie Wilson is a citizen of Canada. "Jane Doe" and "Gracie Wilson" are also pseudonyms for this individual. She was served with the summons and complaint in Ontario on November 9, 2016. *See Proof of Service* (ECF No. 17). Defendant Jane Doe/Gracie Wilson did not file an answer and her default was entered on December 28, 2016. *Clerk's Entry of Default* (ECF No. 20). She has since been deposed in this action. --------

Plaintiffs allege that during the April 2016 convention, Defendants Wilson, Falk and Romantic Times began or continued a malicious campaign to defame and disparage Alexander and Young. Falk and Wilson allegedly made false statements to a group of convention attendees, including romance novel authors and publishers, that: (a) Alexander and Young were involved in secret, inappropriate, illicit, salacious, and scandalous relationships with each other and third parties; (b) were blackmailing publishers and others into using and

promoting Plaintiffs' goods and services; (c) Young was a predator; (d) Wilson was living in fear because of Young's threats to her; (e) Young had other victims; (f) Young sent inappropriate text messages to various authors, including a big name author whose husband became aware of texts and made threats against Young; (g) Young fraudulently obtained money from authors for services he did not perform; and (h) Young was blackmailing Alexander by using details of their supposed inappropriate relationship to keep her in a business partnership. *Id*. at ¶¶ 26-28.

Plaintiffs allege that the defamatory campaign continued after the convention. Wilson allegedly posted defamatory statements about Alexander and Young on Facebook, purportedly confirming the rumors spread at the convention. Wilson stated that Young was a predator and she was in fear of him. An employee of Romantic Times spread Young's name via private messages as a predator. Wilson also allegedly made statements implying that Young was the person who had assaulted her outside her home in October 2015. *Id*. at ¶¶ 29-37. Plaintiff Young alleges that as a result of the Defendants' defamation campaign, promoters of concerts cancelled his scheduled appearances or informed him that they would no longer have an association with him. A book publisher also cancelled a photo shoot with Young, allegedly as a result of defamatory statements made by Defendant Falk. Young alleges that due to the fallout, he was forced to shut down his social media and website. *Id*. at ¶¶ 38-44. Plaintiff Alexander alleges that her reputation has suffered as well, and that she has lost out on business contracts, *3 relationships and opportunities. *Id*. at ¶ 46. Plaintiffs allege claims for violation of the Lanham Act-Trade Libel/Commercial Disparagement, Lanham Act-False Advertising, common law business disparagement/trade libel, defamation, false light, intentional interference with contractual relations and prospective economic advantage, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud/deceptive trade practices, and civil conspiracy.

Plaintiffs request permission to continue to prosecute this action under their professional pseudonyms because they fear that if their true names are disclosed to Defendants or become publicly known, they will be subjected to harassment and abuse touching on their personal lives which they have kept separate from their professional identities and activities. In support of their motion, Plaintiffs have submitted exhibits showing comments posted on the Romantic Times Facebook account in early May, 2016 in response to a post from an individual who stated that "a certain cover-model has been removed from the group due to multiple allegations of abuse and blackmail. Anyone feeling the need to jump to his defense can certainly do so but I'm not letting him back in." The responses included a May 3, 2016 post from Defendant Falk which stated that Plaintiff Young was banned from any RT events. The other posts in this exhibit were made on May 3 and 4, 2016. *Reply* (ECF No. 57), *Exhibit B*.

Plaintiff also attached posts from the Facebook account of Defendant Wilson made in early May 2016 setting forth the manner in which she had allegedly been harassed by Plaintiff Young. The comments in response to Defendant's Wilson's posts also appear to have been made in early May 2016. *Id*. at *Exhibit F*. In March 2017, Defendant Wilson posted a request for donations to help her retain counsel to defend this lawsuit. *Id*. at *Exhibit A*. In that post, Defendant Wilson repeated allegations that she had previously made against the Plaintiff Young in May 2016. This post drew several contributions from individuals who indicated their sympathy and support for Defendant Wilson.

On August 7, 2017, the Court entered a stipulated interim protective order which authorizes Plaintiffs' counsel to disclose Plaintiffs' true names and other personal identifying information to Defendant's counsel, on an "attorney's eyes only" basis, to facilitate obtaining relevant documents and information during discovery. Defendants' counsel, however, is precluded from providing Plaintiffs' true names and personal identification information to his clients or the public pending a decision on the instant motion. *See Order* (ECF No. 62). *4

## DISCUSSION

A plaintiff's use of a fictitious name runs afoul of the public's common law right of access to judicial proceedings and the requirement of Fed.R.Civ.P. 10(a) that the complaint include the names of all the parties. *Does I Thru XXIII v. Advanced Textiles*, 214 F.3d 1058, 1067 (9th Cir. 2000) (*"Advanced Textiles"*) (citing *Nixon v. Warner Communications, Inc*. 435 U.S. 589, 598-99, 98 S.Ct. 1306 (1978) and *EEOC v. Erection Co., Inc*., 900 F.2d 168, 169 (9th Cir. 1990)). In *Doe v. Kamehameha Schools/Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010), the court stated that "[t]he normal presumption in litigation is that parties must use their real names. . . . This presumption is loosely related to the pubic's right to open courts, . . . and the right of private individuals to confront their accusers. . . ." *Id*. (citations omitted). The Eleventh Circuit has also stated that Rule 10(a) "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties. . . . This creates a strong presumption in favor of parties' proceeding in their own names. Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (internal quotation marks and citation omitted). The Eleventh Circuit also quoted *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005), in which the plaintiff sued her ex-boyfriend for illegally distributing a videotape of them having sex when the plaintiff was a minor. The Seventh Circuit noted that plaintiff had denied defendant the shelter of anonymity in bringing her lawsuit, and "yet it is [defendant], and not the plaintiff who faces disgrace if the complaint's allegations can be substantiated. And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability."

Courts have nevertheless permitted parties to proceed anonymously when special circumstances justify secrecy. *Advanced Textiles*, 214 F.3d at 1067. A party may be permitted to use a pseudonym "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1068-69. The court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party. *Id*. (citations omitted). Plaintiffs have been permitted to use pseudonyms in three situations: (1) when identification creates a risk of retaliatory physical or mental *5 harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; or (3) when the anonymous party is compelled to admit his or her intention to engage in criminal conduct and thereby risk criminal prosecution. *Id*. (citations omitted).

In cases where a pseudonym is used to shield the anonymous party from retaliation, the district court should determine the need for anonymity by evaluating the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. *Advanced Textiles*, 214 F.3d at 1068. As examples of plaintiffs who are particularly vulnerable to retaliation, the court referenced children plaintiffs or a prison inmate who served as a government witness. *Id*. (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) and *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (*"Doe II"*)). The court further stated:

The court must also determine the precise prejudice at each stage of proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice. *See James*, 6 F.3d at 240-41 (evaluating defendant's assertions that plaintiffs' use of pseudonyms would prejudice the jury against the defendants and would impair defendant's ability to impeach plaintiff's credibility). Finally, the court must decide whether the public's interest in the case would be best served by requiring that the litigants reveal their identities. *See Stegall*, 653 F.2d at 185 (recognizing that "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them.").

We recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses. In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings, *see* FED R.Civ.P. 16(b), and to issue protective orders limiting disclosure of the party's name, *see* FED.R.CIV.P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. It may never be necessary, however, to disclose the anonymous parties' identities to nonparties to the suit.

214 F.3d at 1068-69.

The plaintiffs in *Advanced Textiles* brought an action under the Fair Labor Standards Act (FLSA) alleging that they were denied overtime pay and were subjected to excessive deductions for unsanitary housing and food that they were required to purchase as a condition of employment. The plaintiffs were Chinese nationals working on labor contracts in the garment industry in Saipan. They alleged that they would be subjected to severe retaliation by the Chinese government and their employers if their true identities were revealed. The court concluded that "based on the extreme nature of the retaliation *6 threatened against plaintiffs coupled with their highly vulnerable status, the plaintiffs reasonably fear severe retaliation, and that this fear outweighs the interests in favor of open judicial proceedings." The court also held that at that early stage of the litigation, the defendants would not be prejudiced by not knowing the identities of the plaintiffs. *Id*. at 1069.

In *Doe v. Kamehameha Schools/Pauahi Bishop Estate*, four minor plaintiffs sought to proceed anonymously in a lawsuit challenging the defendants' allegedly race-based school admissions policies. The plaintiffs argued that they reasonably feared physical injury if their identities were revealed. They pointed to a number of threatening comments made against plaintiffs and attorneys in prior related cases, as well as comments directed at them and their attorneys. 596 F.3d at 1040. The magistrate judge denied the plaintiffs' motion to proceed anonymously. He found that threats in previous lawsuits were not directed toward the children plaintiffs and that internet comments were not threats, but merely voiced the commentators' frustrations with the lawsuit. He also discounted comments suggesting that the plaintiffs would be injured at school. The magistrate judge found that plaintiffs' evidence, at most, suggested that the children might be socially ostracized which did not warrant granting the motion to proceed anonymously. After newspapers published stories on the magistrate judge's order, numerous comments were made on the newspapers' forums, some of which also contained threats. *Id*. at 1041. The plaintiffs' attorney also received threatening calls. *Id*. Based on this additional evidence, the plaintiffs moved the court to reconsider the magistrate judge's order. The district judge, however, upheld the magistrate's denial of the motion.

The Ninth Circuit stated that it was required to affirm the order, unless it concluded that the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors. *Id*. at 1042. The court noted that application of the *Advanced Textile* factors was "quite difficult, particularly in light of the controversy surrounding the case." Under the first

7   factor, concerning the public interest in open judicial proceedings, the court addressed the defendants' argument that their ability to challenge the plaintiffs' standing to bring the lawsuit would be impaired if they were permitted to proceed anonymously. The court stated that "[a]lthough standing is of paramount importance to plaintiffs' ability to sue, it is certainly not the main issue in the public's eye. And with such a large applicant pool, the court will most likely be able to *7 discuss most aspects of an individual's application without revealing the individual plaintiff's identity." *Id*. at 1043. The court noted that there was also a public interest in seeing that the case was decided on its merits which would be furthered by allowing the plaintiffs to proceed anonymously.

The outcome of the motion came down to the two most important factors—the severity of the threatened harm and the reasonableness of the plaintiffs' fears. *Id*. The plaintiffs primarily feared physical harm if their identities were revealed. The court stated that these threats were undoubtedly severe, and there were several factors that militated in favor of finding that the plaintiffs' fears were reasonable. *Id*. at 1044-45. Nevertheless, the court found that the district court did not abuse its discretion in concluding that plaintiffs' fears of physical harm were unreasonable. The court stated that "[t]he magistrate judge correctly recognized that many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out." *Id*. at 1045. The plaintiffs had culled only a few comments out of hundreds of anonymous comments regarding the case, many of which were accompanied by statements supporting nonviolence. The district court also correctly evaluated the plaintiffs' concession that they were not fearful of retaliation or ostracism if they were admitted to the school. *Id*. Although the court found that the district court did not abuse its discretion in denying the plaintiffs' motion, it also stated that "[h]ad the district court found that anonymity was appropriate, we likely would have concluded that the district court did not abuse its discretion. Or, were we permitted to make findings and weigh the factors anew, we might have held that anonymity here was appropriate." *Id*. at 1046.

8   In *Plaintiff B. v. Francis*, the Eleventh Circuit dealt with the type of case in which anonymity is alleged to be necessary to preserve the plaintiff's privacy in a matter of a sensitive and highly personal nature. The female plaintiffs were videotaped by defendants' agents exposing their breasts and/or engaging in sexual conduct with each other. The plaintiffs were minors at the time the videos were shot. Some of the plaintiffs alleged that they were improperly induced into engaging in the conduct and giving signed consents to use the videos. The district court had permitted the plaintiffs to proceed anonymously up to the time of trial. Prior to trial, however, the court entered an order that plaintiffs would not be allowed to remain anonymous at trial. This decision was based, in part, on the district court's concern regarding violation of the news media's and public's First Amendment rights. In reversing the district *8 court's order and remanding the issue for further consideration, the Eleventh Circuit noted that "Plaintiffs had put on a convincing case that, by being identified, they will be permanently linked with the videos containing footage of them." 631 F.3d at 1318. The court noted that certain websites would probably list the plaintiffs as the "stars" of these videos. The court cited the case of another plaintiff who sued the same defendants in her true name and as a result was "permanently" identified in a website as the "17-year-old public breast flasher," and the video could still be purchased from private sellers on Amazon.com. *Id*. The court also stated that the defendants would not be harmed by permitting plaintiffs to proceed anonymously. The defendants had already been convicted of criminal violations related to the videos. They were also aware of plaintiffs' true identities and "were not barred from conducting a full range of discovery in building a defense for trial." *Id*. at 1318-19.

In *Doe v. Smith*, the Seventh Circuit was also faced with the issue of whether anonymity was necessary to preserve the plaintiff's privacy in a matter of a sensitive and highly personal nature. In that case the court reversed the district court's order dismissing plaintiff's complaint. The court stated that on remand, the court would have to revisit the issue of whether plaintiff should be allowed to proceed anonymously. The court noted that plaintiff was a minor when the recording occurred, but was an adult at the time of the lawsuit. It also noted that "[e]veryone at the high school who saw the recording already knows who 'Doe' is." The court stated that "anonymity still could be justified if the tape had been circulated more widely . . . and disclosure would allow strangers to identify the person in the recording and thus add to her humiliation. That question should be addressed by the district court . . ." 429 F.3d at 710.

In this case, Plaintiffs Alexander and Young do not allege fear of retaliatory physical injury if their true names are disclosed. The potential injury to Plaintiffs if their true names are publicly disclosed in this lawsuit is the reputational and emotional injury that they will suffer in their private lives, which have so far been shielded by their use of professional pseudonyms. This case differs from any of the foregoing cases, or other cases cited by the parties, in that the Plaintiffs are known to the Defendants, and to the romantic novel and musical performance communities in which the allegedly defamatory statements have been published, only by their professional pseudonyms. Plaintiff Young alleges that his ability to earn a livelihood as a professional model or country music entertainer under the name "Jackson *9 Young" has been damaged by Defendants' allegedly defamatory statements. Plaintiff Alexander more generally and vaguely alleges that her reputation as the romance novelist "Randi Alexander" has been damaged by Defendants' defamatory accusations and she has lost out on business contracts and relationships. The case for allowing Plaintiffs to proceed under their professional pseudonyms is strengthened by their allegation that Defendants stated that Plaintiffs engaged in an illicit, salacious and scandalous relationship with each other. Plaintiff Alexander is married, and this allegation if connected to her true name could cause injury to her reputation in the community where she is known by her true name. An accusation of marital infidelity is a matter of a sensitive and highly personal nature. Although Plaintiff Young is apparently not married, he could also potentially suffer similar personal harm in his private life if this accusation is connected to his true name.

It is possible that persons who know Plaintiffs by their true names are also aware of their professional pseudonyms and therefore can or already have connected the allegations in this lawsuit to the Plaintiffs. If this is established, then the grounds for permitting Plaintiffs to proceed under their professional pseudonyms will diminish. At this point, the Court accepts Plaintiff's representations that they have kept their actual identities separate from their professional identities.

Given that Plaintiffs are known to Defendants and the professional communities in which they have allegedly been defamed only by their professional pseudonyms, the public interest in requiring that Plaintiffs sue in their true names is not strong. Assuming that there may be some validity to Plaintiffs' allegations that they have been defamed, requiring them to sue in their true names would potentially spread the damaging effects of the defamation to the arena of their private lives where it has not yet reached. Defendants' counsel had been provided with Plaintiffs' true identities and is able to conduct discovery relevant to the claims in this case. If this case is not resolved prior to trial, it will be necessary for the Court to determine whether Plaintiffs should be required to publicly disclose their true names at trial. It is also possible that other developments will occur that warrant requiring Plaintiffs to proceed by their true names. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Proceed in Pseduonym (sic) (ECF No. 49) is **granted** as follows: Plaintiffs may proceed with this action under their professional pseudonyms, and without disclosing their true names to the Defendants or the public, up to the time of *10 trial. Prior to trial, the Court

will determine whether Plaintiffs should be required to publicly disclose their true names at trial.

DATED this 30th day of August, 2017.

/s/_____

GEORGE FOLEY, JR.

United States Magistrate Judge

 casetext