UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-04453-AB-MAR | Date: | August 29, 2023 |
|---|---|---|---|

| Title: | *VPN.Com LLC v. George Dikian et al.* |
|---|---|

Present: The Honorable  **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER DENYING DEFENDANT'S MOTION TO PROCEED UNDER A PSEUDONYMN

### I. BACKGROUND

Plaintiff VPN.Com ("VPN") filed its Complaint on June 29, 2022 (Dkt. No. 1), naming as Defendants George Dikian and Qiang Du. Defendant Du was dismissed from this action by Stipulation on December 22, 2022, leaving Mr. Dikian as the only Defendant in this matter.[1]

VPN's Complaint is only tangentially relevant to this Order, and so the Court will discuss it in brief. VPN alleges "a massive fraud perpetrated by Dikian . . . spanning several months, that ultimately lured VPN into sending Defendants $250,000 as part of what turned out to be two completely fraudulent domain name sale transactions."  (Compl. ¶1.)

---

1 The Court refers to Defendant as Mr. Dikian for clarity.

VPN says that Mr. Dikian used his reputation as "a well-known domain name investor and reseller, as well as a sophisticated, fraudulent online website that posed as an escrow service . . . as the linchpins in [a] scheme to convince VPN that [it] was brokering legitimate transactions . . ."  (*Id.* ¶ 2.)  "Once VPN remitted $250,000 directly to Dikian in accordance with the terms of one of the domain name transactions, Defendants then stalled both transactions, cut off all communications with VPN, and left VPN without recourse other than to file this suit."  (*Id.* ¶ 3.)

The question presently before the Court, though, has little to do with the merits of VPN's lawsuit.  Instead, the question is whether George Dikian—"a professional alias and pseudonym that has been used by the Defendant . . . for some 25 years" (Mot. at 1:26-27), and thus not Defendant's real name—is entitled to continue to defend this action under a pseudonym.

This issue was first raised by Mr. Dikian when he filed an Ex Parte Application for a TRO.  (Dkt. No. 50, "Application.")  The Application requested (as its title suggests) "a temporary emergency order requiring Plaintiff to refrain from filing any amended complaint . . . which names the real identity of the Defendant in this matter . . . until such time as the court has ruled on Defendant's Motion to Proceed under [a] pseudonym."  (Application at 1:18-22.)

The Court denied Defendant's Application because it did not "meaningfully contend with the factors Courts are instructed to consider in analyzing a TRO." (Dkt. No. 52 at 4.)  Nevertheless, the Court allowed Mr. Dikian to file his Motion for a Pseudonym and ordered Plaintiff to refrain from revealing Defendant's true identity until after it ruled on his Motion.  (*See id.*)

Mr. Dikian then filed his Motion to Proceed Under Pseudonym on July 21, 2023. (Dkt. No. 53.)  VPN filed its Opposition on July 28, 2023, and Mr. Dikian Replied on August 9, 2023.  (Dkt. Nos. 55, 57.)

II.     **LEGAL STANDARD**

"Rule 10 of the Federal Rules of Civil Procedure requires that every complaint must include the name of all parties."  *Doe v. United States*, No. 1:20-cv-01052-NONE-SAB, 2020 WL 7388095, at *2 (E.D. Cal. Dec. 16, 2020); Fed. R. Civ. P. 10(a).  The normal presumption, then, is that parties use their real names in service of the public's rights to open court and the rights of individuals to confront their accusers.  *See id*; *Doe v. Kamehameha Schools*, 596 F.3d 1036, 1042 (9th

Cir. 2010).   But in rare cases, "courts have allowed a party to proceed in anonymity where special circumstances justify the secrecy."   *Id.* (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)).   A party may proceed under a pseudonym "in the unusual case when nondisclosure of the party's identity is necessary . . . to protect a person from harassment, injury, ridicule, or personal embarrassment."   *Advanced Textile Corp.*, 214 F.3d at 1067-68 (cleaned up).   "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."   *Id.* at 1068.

Generally, courts have allowed a party to procced with anonymity:

> (1) when identification creates a risk of retaliatory physical or mental harm[;] 2) where it is necessary "to preserve privacy in a matter of sensitive and highly personal nature[;] and 3) where the party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]

*Id.* (cleaned up).   To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears,...(3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest."   *Kamehameha Schools*, 596 F.3d at 1042.

## III.   DISCUSSION

Defendant's Motion represents that "valuable domain name assets are frequently the targets of hackers and are frequently stolen or, in industry parlance, 'hijacked.'"   (Mot. at 2:8-9.)   This matters because Mr. Dikian "is the owner of many extremely valuable domain name properties."   (*Id.* at 2:1-2.)   Defendant explains that he "already has been victimized by criminal hackers, and reasonably fears it will happen again if his true identity is revealed."   (*Id.* at 4:3-4.)   Mr. Dikian attests that he has used an alias "in order to protect [his] personal and family privacy and safety, and [his] many valuable domain name properties." (Dkt. No. 53-1 ¶ 1.)   "Those properties include all of the domains listed in the Complaint in this matter, including 89.com and the list of 95 numerical domains . . . [Defendant] also owns hundreds of other similarly valuable domains . . ."   (*Id.* ¶ 2.)

Mr. Dikian "has retained two expert witnesses who each independently have concluded that the Dikian email account . . . was compromised by unknown criminals." The first report is authored by Rod Rasmussen, the "principal consultant at R2 Cyber." (Dkt. No. 53-7 at 1.) Mr. Rasmussen's Report states:

> The evidence revealed by internet service records and email records proves to a reasonable certainty that [Mr. Dikian's] Yahoo! Mail address was compromised by an unauthorized actor. Once that account was compromised, the fraudster had access to previously sent emails which include login credentials [for an additional account.] Both accounts then were used in furtherance of the alleged fraud on VPN.

(*Id.* at 2.) In other words, Mr. Rasmussen represents it is his opinion that (1) Mr. Dikian's yahoo and webhosting accounts were breached by the same actor; and (2) that actor is responsible for the activity at issue in this lawsuit.

Mr. Rasmussen reasons that "given that the two email addresses [purportedly used to impersonate Dikian and perpetrate the fraud] were deleted within just twelve minutes of each other, after VPN.com and Dikian began investigating this matter, it is obvious that those two Gmail addresses were almost certainly controlled by the same person – who impersonated both the fake buyer and seller in the alleged fraudulent transaction." (*Id.* at 4.)

Mr. Dikian's second expert report is authored by Mark Seiden, who has "investigated numerous account compromises and online frauds over more than the last 20 years." (Dkt. No. 53-8 at 1.) Like Mr. Rasmussen, Mr. Seiden concludes "that there is no evidence that [Defendant] was personally involved" with the alleged fraud at issue in this case and that "[t]o the contrary, there is ample evidence to prove that he was not." (*Id.*) Unlike, Mr. Rasmussen, Mr. Seiden concludes that there were "two malefactors[,]" not one, "since they habitually used different login mechanisms." (*Id.* at 3.)

In Opposition, VPN argues that the expert reports each focus on the merits of the case—i.e., that Mr. Dikian is not responsible for the actions VPN alleges—but offer very little in support of Mr. Dikian's stated need to proceed under a pseudonym. The Court agrees. As VPN argues, "the reports do not establish any threatened future harm" and provide "no factual basis to support the assertion that [Mr. Dikian] is under a reasonable fear of his domain names being stolen [absent the use of an alias.]" (Opp'n at 9:14, 10:6-7.)

Defendant replies that he "has produced ample and undisputed evidence of his reasonable fear that he or his family will be targeted due to the value of his domain name assets. . ." (Reply at 3:8-9.) Mr. Dikian has produced, *inter alia,* an article written by Plaintiff that provides an overview of "Domain name hijacking" (*See* Ex. C); an article about a plot (and attempt) to steal a domain name "at gunpoint" (*See* Ex. D); and an affidavit that sets forth Mr. Dikian's belief that his "valuable domain names would have been stolen by the email hackers, if not for [his] use of the Dikian public alias." (Ex. A.) But while the Court has little doubt that the concerns Mr. Dikian expresses in his affidavit are genuine, the evidence he puts forth demonstrates only (1) the generalized existence of domain name thefts; and (2) that two of his email accounts may have been hacked. What is missing, though, is evidence sufficient to sustain a reasonable fear that *if* Mr. Dikain's alias is lifted, *he* will be the target of domain-name theft.

Mr. Dikian argues that he "has retained two different, extremely well-qualified experts who each have separately confirmed that Defendant's email account was hacked for the purpose of carrying out the alleged fraud on Plaintiff." (Reply at 3:17-19.) But as discussed *supra,* neither report offers any analysis as to the *prospective* harm of domain-name theft Dikian fears absent his pseudonym. The Court lacks the technical expertise to connect the dots between the purported past hacking of email accounts and the reasonableness of Mr. Dikian's fear of future domain-name theft—nor would it be appropriate do so.

Mr. Dikian argues further that "[i]f the Court forces the public reveal of Dikian's true identity, then the value of that pseudonym will be completely destroyed, and his personal reputation will be irreparably damaged." (Mot. at 5:12-14.) Mr. Dikian claims that he did not do the things that VPN alleges. If that is indeed the case, then the Court is certainly sympathetic to the notion that this lawsuit may carry with it unearned reputational harm. But for better or for worse, hundreds of Defendants are sued by name each day in this county—many of whom ultimately prevail at (or before) trial. But because "our courts belong to the people . . . the public and press have a right to look over our shoulders to see how their court system is being used. This consideration counsels in favor of requiring true names of those [who are sued.]" *Doe v. NFL Enterprises,* No. C 17-00496 WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017).

As noted *supra*, a district court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears,... (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the

opposing party, and (5) the public interest." Although the Court agrees with Mr. Dikian that the harm that he fears is severe, it is unable to conclude that the reasonableness and vulnerability factors weigh in favor of a pseudonym. The Court finds that the fourth factor is neutral—VPN would suffer little prejudice were Mr. Dikian to continue to proceed under a pseudonym—and the final factor, the public interest, weighs against granting Defendant's Motion.

Accordingly, Defendant's Motion is **DENIED.**

However, the Court finds the Honorable Judge William Alsup's Order in *Doe v. NFL Enterprises, LLC* instructive. Therein, Judge Alsup denied the Doe Plaintiff's Motion to Proceed under a Pseudonym, but reasoned:

> For purposes of testing the pleadings, however, and assuming that defendants will move to dismiss under Federal Rule of Civil Procedure 12, the Court will allow plaintiff to use only her true first and last initials in pleadings for the time being. If defendants choose to answer rather than move under Rule 12, or if the complaint survives past the Rule 12 stage, then plaintiff will likely be required to re-file her complaint using her true full name.

2017 WL 697420, at *3. The Court notes that in this case, as VPN points out, "Defendant did not move to dismiss the Complaint nor move for summary judgment (which deadline to notice a motion has passed)." (Opp'n. at 9:2-3.) The Court will, however, allow Mr. Dikian to proceed under his true first name and last initial at this time. Accordingly, Plaintiff may file an Amended Complaint naming Defendant only by his first name and last initial. If, though, this case proceeds to trial, Mr. Dikian will likely need to proceed under his real (and full) name.

**IT IS SO ORDERED**.