Brett Lewis, Esq. (*pro hac vice*)
*Brett@iLawco.com*
Michael D. Cilento, Esq. (*pro hac vice*)
*Michael@iLawco.com*
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

Ji-In Lee Houck (SBN 280088)
*jiin@houckfirm.com*
THE HOUCK FIRM
16501 Ventura Blvd, Suite 400-199
Encino, CA 91436
Tel: (888) 446-8257

*Attorneys for Plaintiff*
*VPN.COM LLC*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VPN.COM LLC**, <br><br> Plaintiff; <br><br> v. <br><br> **George Dikian et al.**, <br><br> Defendants. | Case No. <br> 2:22-cv-04453-AB-MAR <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO MODIFY** <br> **[Cilento Declaration and exhibits submitted herewith]** |

1

# TABLE OF CONTENTS

2

**Table of Authorities** ..........................................................................**3**

3

**Introduction** ....................................................................................**4**

4

**Facts** ................................................................................................**7**

5

    A.   Pre-Discovery ..........................................................................7

6

    B.   Written Discovery ....................................................................7

7

    C.   Third-Party Discovery .............................................................8

8

    D.   Expert Discovery .....................................................................8

9

    E.   Defendant's Deposition .........................................................10

10

    F.   VPN's Attempts to Serve ███ .............................................17

11

    G.   Defendant Serves Subpoenas After Discovery Deadline ...............18

12

**Legal Standard** ............................................................................**18**

13

**Argument** .....................................................................................**19**

14

    A.   Further Discovery is Needed ...................................................20

15

        i.   *Slow Discovery by Defendant* ..............................................*20*

        ii.   *Discovery Needed as to* ███ ...........................................*22*

16

        iii.   *Defendant's 8 Outstanding Subpoenas* ..................................*25*

17

    B.   Errors in the Current Schedule and Current Case Posture ..............25

18

**Conclusion** ...................................................................................**27**

19

**Certificate of Compliance** ..........................................................**28**

20

21

22

23

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1

2

# TABLE OF AUTHORITIES

3

4

**Cases**

5

*Addaday, Inc. v. Artist Int'l Co., Ltd*,
6
   No. 221CV05525ABPLAX,

7
   2022 WL 16859853 (C.D. Cal. Aug. 18, 2022)........................................19

8
*Gestetner Corp. v. Case Equip. Co.*,
   108 F.R.D. 138 (D. Me. 1985) ................................................................19

9

10
*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992)..................................................................19

11

**Rules**

12

13

Fed. R. Civ. P. 16(b)(4)................................................................................19

14

15

16

17

18

19

20

21

22

23

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

# INTRODUCTION

Plaintiff VPN.COM LLC ("VPN") respectfully requests an order modifying the current scheduling order, setting a new trial date, and extending certain case deadlines, including the trial date, by approximately 120 days. Although the parties previously stipulated to brief extensions of specific deadlines, this is the first extension request that would impact the overall case schedule or trial date.

In support, VPN relies on three grounds: (1) despite VPN's diligent efforts, fact discovery has proceeded slowly against Defendant; (2) recent discovery suggests that Defendant's son is a potential co-conspirator, and VPN is seeking to obtain discovery from Defendant's son; and (3) the current schedule contains errors that will need to be corrected regardless, and the current case posture warrants additional time for pretrial litigation.

First, despite VPN's diligent efforts, fact discovery has proceeded slowly. As just one example, VPN promptly served RFPs on February 8, 2023, but Defendant did not produce *any* documents until April 11, and even then, Defendant withheld many responsive documents. On July 16—four months after VPN's RFPs were served, *after* the initial fact discovery deadline, and two weeks before his deposition—Defendant made a massive supplement that nearly doubled the size of the overall production. Likewise, Defendant amended his interrogatory responses on July 19, again after the original fact discovery deadline, to disclose basic information that he should

4

1  have disclosed earlier. This included *five* new email accounts owned and

2  operated by Defendant.

3        Second, recent discovery implicates Defendant's son as a potential co-

4  conspirator. During his July 31 deposition (noticed on April 7 ~~May 23~~),

5  Defendant contradicted his own expert by claiming that logins to his email

6  account from an Amazon IP address, which occurred after he changed his

7  password multiple times and activated two-factor authentication, were not

8  authorized. Defendant also testified that he has an unemployed son named

9  ███████████████████████████████████████████████

10 ██████████████████████████████████ accessed Defendant's

11 primary email account – the account at the center of the alleged fraud in the

12 Complaint – through Amazon. (Many of the fraudulent emails at issue in this

13 dispute also copied ██████@37.net – and Defendant is the owner of 37.net.)

14       VPN has diligently sought information about and from Defendant's

15 son, however, Defendant and his son are delaying that. For example, during

16 his deposition, Defendant feigned ignorance and gave conflicting answers to

17 even simple questions about ██████, including whether he has a job, why he

18 dropped out of college, whether Defendant paid for his college tuition, and

19 who pays his expenses now. After Defendant's deposition, VPN issued

20 subpoenas for documents and for deposition testimony from ██████, but so

21 far ██████ has skirted several attempts at personal service at Defendant and

22 ██████ residence. Defendant and his counsel, for their part, have refused to

23 aid in service of the subpoenas on ██████. Thus, because VPN has been unable

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1   to serve ██████ with the subpoenas, despite diligent efforts, VPN needs to and

2   will be moving for leave to serve the subpoenas on ██████ by alternative

3   means. The scheduling order, including the discovery cutoff date, need to be

4   modified so VPN can properly serve ██████ and then compel, if needed, his

5   compliance with the subpoenas.

6        Next, while Defendant opposes this Motion, Defendant has implicitly

7   conceded that the schedule needs to be modified and discovery extended by

8   Defendant's issuing of 8 different subpoenas to eight different entities on

9   September 5, 2023 – a day after the current deadline of September 4, 2023,

10  for fact discovery to be **completed**. Defendant's refusal to agree to extending

11  discovery while at the same time issuing 8 subpoenas after the discovery

12  deadline is inexplicable. Fact discovery thus also needs to be extended so that

13  the 8 subpoenas issued last week by Defendant can be responded to and

14  objected to as necessary, as well as so any evidence therefrom can be properly

15  admitted or excluded at trial.

16        Finally, due to an inadvertent mistake by the parties in proposing an

17  initial case schedule, the current scheduling order has inconsistent pretrial

18  filings deadlines that are two weeks too late, including a motion in limine

19  deadline that post-dates the currently-scheduled final pretrial conference.

20  Thus, some changes to the scheduling order will be necessary in any event.

21  Given this necessity, and given the current posture of the case, VPN

22  respectfully submits that its proposed extension is both modest and

23  reasonable and to the benefit of the parties and the Court.

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

## FACTS

### A. Pre-Discovery

Although VPN originally filed suit on June 29, 2022, it took nearly six months to receive an answer. (Decl. of Michael D. Cilento, Esq., in Support of Motion to Modify dated September 20, 2023 ("Cilento Dec.") ¶¶ 3-8). Initially, Defendant's use of pseudonyms, inaccurate addresses, and mailbox services precluded personal service, forcing VPN to file an application for alternative service. (*Id.* ¶ 4). Then, after the Court granted that Motion and VPN made alternative service, Defendant defaulted. (*Id.* ¶ 5). Ultimately, Defendant appeared, the parties stipulated to set aside the default, and Defendant filed an answer on December 9, 2022. (*Id.* ¶¶ 6-8). The parties then submitted a joint pre-trial report on January 27, 2023, and the Court entered a scheduling order on February 9. (*Id.* ¶ 9). That order set trial for November 7, 2023. (*Id.*)

### B. Written Discovery

VPN promptly began discovery. On February 8, one day before the Court entered the initial scheduling order, VPN served its RFPs. (*Id.* ¶ 10). However, Defendant took 62 days to make *any* production. (*Id.* ¶ 11). On April 11, Defendant produced 798 Bates-stamped pages, approximately 10% of which came from third-party subpoenas responses. (*Id.*) For comparison, VPN produced 4072 pages on March 24. (*Id.* ¶ 12).

VPN also served interrogatories on Defendant on April 7, and received a response on May 8. (*Id.* ¶¶ 13-14). However, after reviewing the responses,

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1  Defendant's production, and third-party productions, VPN found numerous

2  deficiencies, which culminated in a Rule 37-1 letter on June 28. (*Id.* ¶ 15).

3         After a meet and confer over this dispute, Defendant acknowledged

4  the deficiencies. On July 16, he made a second production, which contained

5  631 pages, or approximately 45% of Defendant's total productions to date.

6  (*Id.* ¶ 16). On July 19, Defendant amended his interrogatory responses which,

7  among other things, disclosed five additional email accounts that Defendant

8  maintains. (*Id.* ¶17).

9                **C. Third-Party Discovery**

10         VPN also served subpoenas on third parties, mainly seeking forensic

11  evidence relating to email or other online accounts, such as IP addresses,

12  user-agent strings, and email headers. (*Id.* ¶ 18). Although some third parties

13  responded promptly, others did not. For example, although not disclosed in

14  his original interrogatory responses, VPN discovered Defendant extensively

15  used a "live.com" email address to conduct business. (*Id.* ¶ 19). On May 11,

16  VPN issued a subpoena to Microsoft for information pertaining to that and

17  one other email account. (*Id.* ¶ 20). However, despite prompt service and

18  repeated follow-ups to Microsoft's counsel, Microsoft did not produce

19  documents until late in the day on July 31—the same day that Defendant was

20  deposed. (*Id.* ¶¶ 21).

21                **D. Expert Discovery**

22         On July 3, the deadline for expert disclosures, Defendant disclosed

23  three experts: Rod Rasmussen, Alan Perlman, and Mark Seiden. (*Id.* ¶ 22).

*MEMORANDUM IN SUPPORT OF MOTION TO MODIFY*

The disclosure included their reports, exhibits, and evidence they relied upon. (*Id.*). Rasmussen and Perlman relied extensively on evidence in Defendant's possession that was responsive to VPN's RFPs, yet Defendant had not previously produced the materials.  (*Id.* ¶ 23). However, many of these documents were then included in Defendant's supplemental production on July 16. (*Id.*).

On July 27, Defendant's counsel sent an email: "We have just realized that the annexes to Mark Seiden's expert report may have been inadvertently omitted from our disclosure earlier this month. They are attached." (*Id.* ¶ 24). However, metadata suggests most of these "inadvertently omitted" annexes were created after July 3, and at least one document displays internet posts from mid-July. (*Id.;* **Exhibit A**.)

Rasmussen's expert disclosure included an attachment labeled "Dikian - Yahoo Google Hostgator ISP Analysis." (*Id.* ¶ 25; **Exhibit B**).  This "ISP Analysis" purports to list IP addresses for connections to three accounts, plus the corresponding internet service provider, associated "services", and IP location. (*Id.*) Connections that Rasmussen opines were associated with the fraud or "unauthorized access" are highlighted. (*Id.*)

The last highlighted connection to Defendant's Yahoo account was on March 17, 2022. (*Id.* ¶ 26). According to Rasmussen, this was around the time Defendant "closed off unauthorized access to it by changing the password and deploying two-factor authentication." (*Id.*) Thereafter, there were numerous connections from Google and Amazon ISPs, all labeled

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

"Services: Datacenter." (*Id.*) Two of the Amazon connections were on April 26, weeks after Defendant allegedly secured his account. (*Id.*)

Rasmussen states that Packethub S.A. is "also known as 'NordVPN'." (*Id.* ¶ 27). NordVPN claims that it has "over 5,842 servers in 60 countries," including in 15 major cities in the United States. (*Id.* ¶; **Exhibit C**). NordVPN's "Quick Connect" button will "connect you to the best VPN server for you at the moment." (*Id.*) In practice, this is typically the closest physical server. (*Id.*)

The ISP analysis highlighted ten connections from Packethub-NordVPN. (*Id.* ¶ 28). It states that three of these VPN connections were made from Los Angeles, six were from Miami, and one was from New York. (*Id.*) The single New York connection was on June 5, 2022. (*Id.*)

The Seiden report states that Defendant uses an "ATT hotspot." (*Id.* ¶ 29). The ISP Analysis lists 22 AT&T Mobility LLC connections, none of which are highlighted as "unauthorized." (*Id.*) Five of these connections were made from New York between May 27, 2022, and June 9, 2022. (*Id.*; Exhibit C).

### E. Defendant's Deposition

VPN originally noticed Defendant's deposition on April 7, 2023, for May 23 (*Id.* ¶ 30). However, due to scheduling conflicts and other discovery delays, it did not occur until July 31. (*Id.*). As previously noted, Defendant nearly doubled his document production on July 16, and then substantially

*MEMORANDUM IN SUPPORT OF MOTION TO MODIFY*

amended his interrogatory responses on July 19—just two weeks before the deposition. (*Id.* ¶¶ 15-16).

During his deposition, Defendant was unable (or unwilling) to provide answers to many basic questions, repeatedly claiming that he did not understand the question or did not recall the answer. For example:

Q: What about drugs or alcohol, have you consumed any drugs or alcohol today?

A: I don't understand your question. I don't know what you mean, drugs.

Q: You don't know what drugs are?

…

A: I think coffee could be considered a drug, so I am not sure what you mean.

Q: Did you have coffee today?

A: No.

(*Id.* ¶ 32).

Q: Did you ever meet your attorney, Mike Rodenbaugh, before this case started?

A: I don't understand your question.

Q: Why not? What don't you understand?

A: Because there is many differences of "meet."

(*Id.* ¶ 33).

Q: Mr. [Z.] do you use any names other than [Defendant]?

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1          A: I don't understand your question. Use?

2          Q: Yeah, use.

3          A: I don't know "use."

4   (*Id.* ¶ 34).

5          Q: Are you employed?

6          A: I don't understand the question.

7   (*Id.* ¶ 35).

8          Q: Do you work?

9          A: I am retired.

10         ...

11         Q: When did you retire?

12         A: I don't understand your question.

13  (*Id.* ¶ 36).

14         Q: So do you know approximately how much revenue you generated

15             2022?

16         A: No.

17         …

18         Q: Do you know if it was more than one thousand dollars?

19         A: I don't know.

20  (*Id.* ¶ 37).

21         Q: Did you produce this document in this litigation?

22         A: I am not sure.

23

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1        Q: You are not sure? What about the stamp at the bottom, does that

2            help you remember?

3        A: Nothing helps me. I am not sure what my attorneys produced.

4    (*Id.* ¶ 38).

5        Q: Did he [Defendant's son] graduate from college?

6        A: No.

7        Q: Why not?

8        A: I don't know.

9        Q: You did not ask him?

10       A: I don't recall.

11       Q: Did you pay for his college tuition?

12       A: I don't recall.

13   (*Id.* ¶ 39).

14       Q: Does your son have a job?

15       A: I don't know.

16   (*Id.* ¶ 40).

17       Nevertheless, Defendant did disclose that his son is named █████, that

18   he speaks with ██████ regularly, and that Defendant owns a house in ████

19   ██████ where █████ lives. (*Id.* ¶ 42-43). When asked who pays for ██████

20   expenses, Defendant responded: "He does not really have expenses. He lives

21   in my home and drives my car. I buy the food or whatever, he buys it. Or I

22   don't know. He collects the rent for me and that's it. I don't know. I don't

23   pay for anything." (*Id.* ¶ 44).

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1    Defendant also disclosed that Defendant primarily lives in Florida and

2    has taken many domestic trips in the last two years: "Los Angeles. Las Vegas.

3    Many destinations in Florida. Up and down the east coast, all the way to New

4    York and back. Many stops on the way." (*Id.* ¶¶ 45-46). When asked: "[d]o

5    you know now if you were in New York City on these dates, from May 27th

6    to June 9th?" Defendant responded: "I am not sure, but could have been my

7    RV trip at that time. I am not sure." (*Id.* ¶ 47).

8    Defendant repeatedly denied knowledge of Google and Amazon's

9    cloud services, or logging into his Yahoo account through them, even though

10   Defendant's expert has stated that such logins were not unauthorized:

11   Q: You don't know what Google Cloud Services is?

12   A: No. I don't know exactly what it is. I don't know. I don't know.

13   (*Id.* ¶ 48).

14   Q: What about Amazon Elastic Cloud, have you ever heard of it?

15   A: No.

16   (*Id.* ¶ 49).

17   Q: Those April 26 connections from Amazon that we're looking at,

18       that is more than a month after you said you secured your account,

19       your email account; right? Remember when you secured your

20       email account?

21   A: Yes.

22   …

23

14

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1        Q: And these were in late April 2022, more than a month after you

2             contend that you secured your account; correct?

3        A: Yes.

4    (*Id.* ¶ 50).

5        Q: You never logged into your email accounts through Amazon or

6             Google?

7        A: Through Amazon?

8        Q: Yeah, through Amazon.

9        A: Logging into email through, no. I don't know how to do that. What

10           did you say, through Google also?

11        Q: Through Amazon or Google, have you ever logged into your --

12        A: Into my Yahoo account?

13        Q: Yes.

14        A: No, I don't know how you can do that. Never did.

15    (*Id.* ¶ 51).

16        However, Defendant did eventually go on to state that his son had in

17    fact logged into Defendant's account through Amazon:

18        Q: Have you ever logged into your Yahoo email through Amazon?

19        A: No. My son did.

20    (*Id.* ¶ 52). Defendant then attempted to recant his unambiguous response that

21    his son had logged into this Yahoo account with the following explanation:

22        Q: Did your son use your email account to sell things on Amazon?

23

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1    A: He didn't have access to the email account. I think he tried to sell

2        on Amazon and he needed an email to get correspondence from

3        and I suggested G.Dikian@yahoo.com since that email is on my

4        phone, always accessible for me. The phone reception in Bel Air

5        where he lives is close to zero. And he -- I think he needed a

6        response from Amazon to do something with sales, so he -- I

7        suggested he use my email since I will get the response on my

8        email and I can tell him what it was.

9    (*Id.* ¶ 53). Defendant was then adamant that his prior statement was incorrect:

10   Q: Do you think it's possible that your son has been logging into your

11       email account? Is it possible?

12   A: Impossible.

13   (*Id.* ¶ 54).

14       When asked about security for his Yahoo account, Defendant provided

15   conflicting answers:

16   ████████████████████████████████

17   ██████████████████████████████████

18   ████████████████████████████████████

19   ██████████████████████████████████

20   ████████

21   (*Id.* ¶ 55).

22       Later in the deposition, Defendant admitted ████████████████

23   ██████████████████████████████ (*Id.* ¶ 56).

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*



Q: Where your son lives?

A: My son lives there right now, yes.

Q: How long has he lived there?

A: Since three months old.

(*Id.* ¶ 57).

Many of the emails used to perpetrate the fraud copied someone named "Adam Warren" at the email Adam@37.net (*Id.* ¶ 58). When asked "Who is Adam Warren?" Defendant responded, "No idea." (*Id.*).

**F.  VPN's Attempts to Serve** ▮▮▮▮

On August 7, VPN issued subpoenas to ▮▮▮ at the address provided by Defendant during his deposition. (*Id.* ¶ 59). VPN's process server tried to make personal service on August 10, 11, and 12. (*Id.* ¶ 60). However,

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

Defendant's house sits behind a large metal gate surveilled by cameras. When the server used the callbox, no one answered. (*Id.*) The process server also left a note, but no one responded to that either. (*Id.*) Defendant's attorney also refused to accept service on ▆▆▆'s behalf or to consent to a stipulation for alternative service. (*Id.* ¶ 61). VPN now intends to file a motion for alternative service of the subpoenas on Adam. (*Id.*)

### G. Defendant Serves Subpoenas After Discovery Deadline

The non-expert discovery cutoff in this action was September 4, 2023. (*See* ECF 58) (August 9, 2023, Court Order granting the parties' stipulation to extend the non-expert discovery cutoff to September 4). The non-expert discovery cut-off deadline means the "final day for **completion of discovery**, including resolution of all discovery motions." ECF 34 at p. 3 (emphasis in original). Indeed, the "discovery cut-off date is the last day by which all depositions must be completed, responses to previously-served written discovery must be provided, and motions concerning discovery disputes must be heard." *Id*. at p. 5. Despite this clear deadline, Defendant issued eight subpoenas on September 5, 2023 (without giving VPN any advance notice of such issuance). (*See* Cilento Dec. ¶ 62-63, **Exhibit D**).

### LEGAL STANDARD

This Court regularly applies the following standard on a motion to modify:

Under Rule 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent." To show good cause for an extension, a

18

party must provide specific, detailed, and non-conclusory reasons for granting the extension, including a showing of diligence in pursuing the litigation. *See* Fed. R. Civ. P. 16(b)(4) (requiring good cause showing); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting that the standard focuses on a party's diligence and that "the inquiry should end" when diligence is not shown). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

*Addaday, Inc. v. Artist Int'l Co., Ltd*, No. 221CV05525ABPLAX, 2022 WL 16859853 (C.D. Cal. Aug. 18, 2022) (Birotte, J.) (granting extension but also limiting it to approximately 90 days since the plaintiff "fail[ed] to provide any explanation in support of their proposed length for the extension"). VPN does not seek a departure from this standard.

## ARGUMENT

Despite VPN's diligent efforts, discovery in this case has proceeded slower than expected. Substantial discovery took place in the second half of July—after the original fact discovery deadline. That discovery also raised serious questions about Defendant's son's access to his email account and potential involvement in the fraud. Given these circumstances as well as existing errors in the pretrial schedule, and Defendant's own discovery

19

*MEMORANDUM IN SUPPORT OF MOTION TO MODIFY*

served after the discovery deadline, there is good cause to grant an approximately 120-day extension to certain dates in the scheduling order.

### A.  Further Discovery is Needed

#### i.  Slow Discovery by Defendant

In contemplation of the original July 10 fact discovery deadline, VPN promptly served RFPs in February, and interrogatories and a deposition notice in April. (*Id.* ¶¶ 10, 13, 30). However, Defendant was not prompt with its responses. In fact, Defendant failed to provide any information, including basic disclosures, for several months, forcing VPN to serve one formal Rule 37-1 letter notice and then another formal LR 37-1 letter on June 28, 2023 as to numerous deficiencies in Defendant's original responses to RFPs and ROGs. (*Id.* ¶ 15).

The parties held a meet and confer on the deficiencies, and Defendant's initial document production was ultimately supplemented by a production on July 16 that nearly doubled its size (*Id.* ¶ 16). The interrogatory responses were likewise missing basic information, and were substantially amended on July 19, including the disclosure of five new email accounts. (*Id.* ¶ 17). Finally, Defendant's deposition did not take place until July 31, even though the deposition was originally noticed on April 7, 2023 for May 23, 2023. (*Id.* ¶ 30).

At that deposition, Defendant was severely obstructive and refused or was unable to answer basic questions, such as how much money he makes, when he retired, whether his live-in son has a job, whether he paid for his

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

son's college tuition, and whether he had consumed any drugs on the day of the deposition. (*Id.* ¶¶ 32-40). Whether those were credible answers is certainly a question. Regardless, it made the deposition less productive and is illustrative of Defendant's responses to more complicated questions. Accordingly, VPN must now pursue follow-up discovery to secure relevant information about Defendant, his travel history, his businesses, and his son's involvement with Defendant as to the alleged fraud.

VPN was also reasonably prompt in pursuing third party discovery in this action.  For example, although not disclosed in his initial interrogatory responses, VPN eventually discovered that Defendant used a "live.com" email address, and subpoenaed Microsoft for related information in May. (*Id.* ¶ 20). But it took Microsoft more than three months to provide the requested information, which it served on July 31—after Defendant's deposition. (*Id.* ¶¶ 21).

Likewise, within days of learning about ████, and his use and access to Defendant's email, VPN issued subpoenas directed to him at the address provided by his father. (*Id.* ¶ 59). However, ████ has been avoiding personal service behind the metal gates of his father's home and is ignoring his email. (*Id.* ¶ 60). Defendant, as both ████'s father and the person providing his financial support, has not facilitated this process or allowed Defendant's counsel to facilitate. (*Id.* ¶ 61). In fact, Defendant has even refused to consent to a motion for alternative service and is apparently confounding the issue of

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1    service with whether ███ or Defendant would be entitled to a protective

2    order. (*Id.*).

###    ii.    Discovery Needed as to ███

4    Defendant's theory of the case is that he is not technically sophisticated

5    and an unknown "fraudster" somehow gained access to his Yahoo account

6    and used it to scam VPN. In support, he relies on expert reports claiming that

7    there were allegedly unauthorized connections to his Yahoo account that

8    ceased after he changed his password and activated two-factor authentication.

9    But there are two major problems with this theory.

10    First, the Rasmussen report shows all but one of the "unauthorized"

11    VPN connections were from Miami and Los Angeles, *i.e.*, the locations of

12    the NordVPN servers closest to where Defendant and Adam live. The one

13    exception was a connection in New York City on June 5, during the very

14    same period Defendant was using an AT&T hotspot in or around the city on

15    an RV trip.

16    Second, Rasmussen's analysis shows allegedly unauthorized access

17    *after* Defendant changed his password, as well as authorized access from an

18    Amazon datacenter (i.e., cloud services) *after* Defendant activated two-factor

19    authentication. Yet, during his deposition, Defendant contradicted his expert

20    by testifying that he did not login to his email through Amazon and did not

21    know how to do so. (*Id.* ¶ 51).

22    When asked about this discrepancy, Defendant admitted that ███

23    logged into his Yahoo email through Amazon. (*Id.* ¶ 52). While Defendant

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

attempted to recant that admission, he did so with a vague and non-credible explanation—claiming that ██████ wanted to sell on Amazon and needed to use his email because of poor cellphone reception. (*Id.* ¶ 53).

If Defendant did not access his account through a VPN after changing the password, or through a cloud service after turning on two-factor authentication, then who did and how did they do so? And why were the allegedly unauthorized connections from locations near where Defendant or his family were living and travelling? Defendant's experts offer no explanations. VPN offers two: Defendant is lying and/or someone else close to him with access to his password and phone was involved in the fraud.

Defendant's testimony shows that ██████ had the opportunity. ████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████

Defendant's testimony also shows that ██████ had the motive. ██████ is a college drop-out, unemployed, and depends on his father for support. (*Id.* ¶¶ 39, 40, 44). Although Defendant is very wealthy, and provides ██████ with a home and car, he otherwise doesn't "pay for anything." (*Id.* ¶ 44). Defendant also testified that he does not know why his son dropped out of college, if he has a job, or if he generates any revenue. (*Id.* ¶ 39, 40).

It is also worth noting that, despite not knowing answers to many basic questions—approximately how much money he makes, how he met his attorney, or whether he paid for his son's college tuition—Defendant was quick to testify, with absolute certainty, that it was "impossible" for his live-in son to access his account. (*Id.* ¶ 54). Yet at the same time, he had no explanation for allegedly unauthorized connections weeks after he changed his password and activated 2FA. His only explanation, in a moment of truth, was:

> Q: Have you ever logged into your Yahoo email through Amazon?

> A: No. My son did.

(*Id.* ¶ 52).

Given that ████m is the only other person to have accessed Defendant's email account that is the center of the fraud, and given that ██████████ ███████████████████████████████████████████████████████████ ██████, documents and testimony from ██████ is appropriate in this action. Accordingly, VPN promptly issued subpoenas to ██████. (*Id.* ¶ 59). However, ██████ has avoided service in a gated property and Defendant has made clear that he intends to fight discovery on his son through every means, including service. (*Id.* ¶¶ 60-61). A modest extension of approximately 120 days should allow time for the parties and ██████ to address the service dispute, brief any motions for alternative service and for a protective order (as Defendant has indicated he would do), and to ultimately get discovery from ██████ and if warranted for VPN to prepare a second amended complaint naming ██████.

24

*MEMORANDUM IN SUPPORT OF MOTION TO MODIFY*

### iii.    Defendant's 8 Outstanding Subpoenas

Given Defendant's obstruction of basic discovery and given Defendant has opposed this Motion every step of the way, it is inexplicable that Defendant would then issue on September 5, 2023, 8 substantive subpoenas to 8 different entities *after* the completion of discovery deadline of September 4, 2023, that the parties had agreed to. (*Id.* ¶ 62-63). Defendant's issuing of the late subpoenas, without any prior notice, is telling, as it shows that further discovery of the claims and defenses in this action is needed. The modest and reasonable extension of 120 days to the case schedule would allow for that further discovery to take place. Furthermore, as to Defendant's specific 8 subpoenas that are outstanding, and that were improperly issued after the discovery cutoff, VPN (and presumably Defendant too) needs time to review any new information or evidence that becomes available, and to object to any questionable requests or evidence that is ultimately offered.

### B. Errors in the Current Schedule and Current Case Posture

When jointly preparing the initial case schedule, the parties made an inadvertent yet significant mistake. They calculated the pretrial filing dates based on weeks before trial, rather than weeks before the final pretrial conference ("FPTC") (*See* ECF 39). As a result, trial filings deadlines are approximately two weeks too late to prepare and argue the motions at the FPTC, currently scheduled on October 20. For example, oppositions to motions in limine are currently due on October 23, after the FPTC. (*Id.*)

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

To make matters worse, the parties already agreed and stipulated to extensions of several of the earlier dates, thus removing flexibility that might otherwise be available within the existing schedule. (*See* ECF Nos. 45, 58). For example, with a current discovery deadline of September 4, and with VPN's First Amended Complaint pending before the Court, it seems completely impractical to move the pretrial filings deadlines up earlier so that they can be timely briefed by the FPTC. Rather than trying to cram all these important deadlines in at the last minute, it would be far easier on both the parties and the Court to push the trial date out. Given the other issues identified above and winter holidays, VPN submits that an approximately 120-day extension would be reasonable.

/

/

/

/

/

/

/

/

/

/

/

/

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

# CONCLUSION

For the foregoing reasons, VPN respectfully requests that the Court enter the accompanying proposed scheduling order, setting a new trial date and extending and reopening certain discovery and pretrial deadlines in the case by approximately 120 days.

Respectfully Submitted,

Dated: September 20, 2023          By:     */s/ Michael Cilento*
                                                    Michael D. Cilento

                                                    **LEWIS & LIN LLC**
                                                    Brett Lewis, Esq. (*pro hac vice*)
                                                    Michael D. Cilento, Esq. (*pro hac vice*)

                                                    **THE HOUCK FIRM**
                                                    Ji-In Lee Houck (SBN 280088)

                                                    *Attorneys for Plaintiff*
                                                    *VPN.COM LLC*

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*

1

## CERTIFICATE OF COMPLIANCE

2

3
  The undersigned, counsel of record Plaintiff VPN.COM LLC, certifies that this brief contains 5,036 words, which complies with the word limit of L.R. 11-6.1.

4

5

6
       By: */s/ Michael Cilento*
           Michael D. Cilento

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*MEMORANDUM IN SUPPORT OF MOTION  TO MODIFY*