Ji-In Lee Houck (SBN 280088)
*jiin@houckfirm.com*
**THE HOUCK FIRM**
16501 Ventura Blvd, Suite 400-199
Encino, CA 91436
Tel: (888) 446-8257

Brett Lewis, Esq. (*pro hac vice*)
*Brett@iLawco.com*
Michael Cilento, Esq. (*pro hac vice*)
*Michael@iLawco.com*
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for VPN.COM LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VPN.COM LLC,<br>　　　　　*Plaintiff*,<br><br>　vs.<br><br>EITAN Z.,<br>a/k/a GEORGE DIKIAN<br>and<br>JOHN DOE<br><br>　　　　　*Defendants*. | Case No: 2:22-cv-04453-AB-MAR<br><br>**FIRST AMENDED<br>COMPLAINT FOR:**<br><br>(1) FRAUD<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

1

Plaintiff VPN.com LLC ("VPN"), by and through undersigned counsel, for VPN's First Amended Complaint against Defendant Eitan Z., a/k/a George Dikian ("Dikian" or "Eitan Z."), and John Doe ("Doe") (together as "Defendants"), hereby alleges as follows:

## NATURE OF ACTON

1. This is an action for the recovery of damages due to a massive fraud perpetrated by Dikian, and Doe, spanning several months that ultimately lured VPN into sending Defendants $250,000 as part of what turned out to be two completely fraudulent domain name sale transactions.

2. The Defendants used, *inter alia*, the reputation of "George Dikian" - a fraudulently created and unregistered alias manufactured by Dikian across at least five different email addresses, including but not limited to: ezively@live.com, g.dikian@yahoo.com, George.dikian@gmail.com, George@89.com, and George@37.net – as well as a sophisticated, fraudulent online website that posed as an escrow service, Intermediar.com ("Intermediar"), as the linchpins in their scheme to convince VPN that VPN was brokering legitimate transactions for Dikian.

3. Once VPN remitted $250,000 directly to Dikian in accordance with the terms of one of the domain name transactions, Defendants then stalled

**FIRST AMENDED COMPLAINT**
2

both transactions, cut off all communications with VPN, and left VPN without recourse other than to file this suit.

4. VPN now seeks relief in this Court against Defendants with a claim for fraud, seeking, *inter alia*, the $250,000 that was unambiguously wired to and accepted by Defendants, and punitive damages that will deter Defendants from defrauding any further victims (as detailed herein, VPN is not the only victim of Defendants).

## PARTIES

5. VPN is a Georgia limited liability company with a principal place of business at 378 Aldridge Avenue, Scottdale, GA 30079. VPN's sole members, Michael Gargiulo and Joseph Gargiulo, are also citizens of Georgia.

6. Eitan Z., a/k/a George Dikian, is an individual, who, upon information and belief, resides in the State of California.

7. John Doe is an individual whose identity is unknown to VPN at this time, but who, upon information and belief, worked with and conspired with Dikian in the scheme to defraud VPN.

## JURISDICTION AND VENUE

8. The Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

9. The Court has personal jurisdiction over as, upon information and belief, resides in California, conducts substantial business in California, and uses the alias George Dikian, which also (fraudulently) uses a California address as a place of residence.

10. Venue is proper in this Court pursuant to 28 U.S. Code § 1391 (b)(3).

## STATEMENT OF FACTS

11. VPN is, *inter alia*, a domain name broker specialist, helping buyers and sellers connect and transact on some of the most high-profile domain names available on the web today.

12. On March 8, 2022, VPN was approached by an individual claiming to be named "Qiang Du" ("Du"), associated with an entity called ZTE Holdings (中興新) ("ZTE").

13. Du stated that ZTE was interested in purchasing the domain name <89.com> ("89.com") and sought VPN's help in identifying the owner and facilitating the transaction (the "Intermediar Transaction")..

14. After confirming Du's serious intention to acquire 89.com, VPN began its work to identify the owner of 89.com and determine whether an acquisition could be possible.

**FIRST AMENDED COMPLAINT**
4

15. Upon investigation, VPN discovered that 89.com was owned by Dikian, whom VPN had communicated with in the past regarding certain potential domain name sale transactions.

16. Dikian, as the alias of Eitan Z., is a well-known domain name investor and reseller, with, upon information and belief, over 1,800 domain name registrations tied to his email addresses G.Dikian@yahoo.com and ezively@live.com.

17. Upon information and belief, Eitan Z. uses the Dikian alias because his true identity is tied to a history of cybersquatting and trademark infringement lawsuits and domain name disputes, including actions that allege Eitan Z. redirected famous typo-squat domain names to pornography websites.

18. Nevertheless, Eitan Z. is the true owner and operator of the email addresses and accounts G.Dikian@yahoo.com and ezively@live.com.

19. Eitan Z. is also the owner and operator of the domain names 89.com and 37.net.

20. On March 8, 2022, VPN reached out to Dikian by email at Dikian's known email addresses "G.Dikian@yahoo.com" and "George@37.net". These email addresses were known by VPN due to previous communications with Dikian dating back to 2015, and these email addresses

**FIRST AMENDED COMPLAINT**
5

were also confirmed by VPN through internal investigation, namely by searching historical WHOIS records for 89.com.

21. On March 8, 2022, Dikian responded to VPN and stated that 89.com could be acquired in the range of 2-3 million dollars.

22. VPN considered this a reasonable opening position, particularly given the value of 89.com in the Chinese market, as the numbers 8 and 9 are very significant in Chinese culture.

23. VPN then worked, over the course of several weeks, to broker the deal between Dikian and Du. During this time, VPN communicated with Dikian by email on a near daily basis, through several email addresses, including G.Dikian@Yahoo.com, George.Dikian@Gmail.com, and George@37.net.

24. After several rounds of negotiation with Dikian, Dikian agreed on an acquisition price of $2,250,000 net to Dikian.

25. After several rounds of negotiation with Du, Du agreed on an acquisition price of $4,400,000 to be paid by Du.

26. VPN's net proceeds for facilitating the deal would be $2,150,000.

27. Despite VPN's insistence that either Escrow.com or Epik.com be used to escrow and facilitate the transaction, Dikian insisted that the transaction be done through Intermediar, which Dikian stated could easily facilitate payment in Bitcoin, causing less of a tax burden for Dikian on the transaction.

**FIRST AMENDED COMPLAINT**

6

28. After the setup and Identity Verification was completed by Intermediar for each party, Dikian, Du, and VPN agreed to use Intermediar to facilitate the Intermediar Transaction, but Du stated that Du could not purchase Bitcoin to fund the transaction, since Du was located in China, which has a complete ban on transacting in cryptocurrencies.

29. After further back and forth with Dikian on this issue, Dikian agreed to accept $2,000,000 in USD from Du through Intermediar and $250,000 in a direct Bitcoin payment from VPN, which VPN would send after its Broker commission payout was released by Intermediar.

30. On March 12, 2022, VPN registered an account with Intermediar to act as Broker, and subsequently sent verification documents, including individual and business identification documents, to verify the account per Intermediar's instructions.

31. On April 15, 2022, Du confirmed to VPN that Du's Intermediar account was registered under yingxiao@zte.com.cn. This statement was false, as Intermediar is a fraudulent escrow service.

32. On April 16, 2022, Dikian emailed VPN from the email address "George@89.com" inquiring whether VPN was ready to complete the transaction. The use of this email address, tied to 89.com, served as further proof of Dikian's identity and the legitimacy of the Intermediar Transaction.

**FIRST AMENDED COMPLAINT**
7

33. The headers for the George@89.com email address show that authentication "passed," and list the server as "websitewelcome.com," which is the email server used by HostGator, the company where 89.com is registered. This confirmed VPN was communicating directly with the owner of 89.com

34. On April 20, 2022, Intermediar set up the Intermediar Transaction, and on the same day, Dikian purported to accept the transaction's terms through Dikian's Intermediar account registered under G.Dikian@yahoo.com.

35. On April 23, 2022, Intermediar confirmed that Du had partially funded the transaction by depositing $2,200,000 into Intermediar. This confirmation was false.

36. On April 24, 2022, Intermediar confirmed that Dikian had delivered 89.com into escrow with Intermediar. This confirmation was false, as Dikian never transferred the domain name.

37. On April 24, 2022, Dikian provided his Bitcoin wallet address to VPN in order for VPN to make the $250,000 payment once Intermediar confirmed completion of the transaction. Dikian provided the following Bitcoin wallet address: bc1qymcdwgqde47qxd8s7tk0jyufpgejrgtg4gw5qr.

38. On April 27, 2022, Intermediar confirmed that 89.com had been delivered to Du's Intermediar account for a one-day inspection period. This confirmation was false, as 89.com was never transferred.

39. On April 29, 2022, Intermediar confirmed that Du had accepted delivery of 89.com, that the transaction was now completed, and that payouts from the deal would be forthcoming. This statement was false.

40. While the Intermediar Transaction was coming to a close, but not yet completed, Dikian provided a list to VPN with 95 additional premium domains for transacting. VPN then began negotiating between Dikian and Du for an acquisition of the package of 95 three-number domain names (the "95 3N Domains") (the "Escrow.com Transaction").

41. After further negotiations, VPN, Dikian and Du came to terms on the Escrow.com Transaction, with a deal that would see Du paying $12,530,000, Dikian receiving $8,025,000, and VPN receiving $4,475,000

42. Upon information and belief, Defendants arranged the Escrow.com Transaction in order to lend credibility to their fraud and to the fraudulent Intermediar Transaction, which had not yet closed. Of note, this time, Dikian agreed to facilitate the sale of the 95 3N Domains through Escrow.com, one of the world's largest and most reputable online escrow services with over $5 billion in transactions processed.

43. On May 1, 2022, upon VPN's insistence, Dikian sent VPN a video showing emails evidencing the recent re-registrations of many of the 95 3N

**FIRST AMENDED COMPLAINT**
9

Domains being included in the Escrow.com Transaction, as well as other domains not included in the Escrow.com Transaction but owned by Dikian.

44. On May 2, 2022, Escrow.com set up the Escrow.com Transaction through their concierge service, with the Transaction #11869799 and the Escrow #2610588.

45. On May 2, 2022, Escrow.com confirmed to VPN that Dikian had been verified and had agreed to the terms for the Escrow.com Transaction.

46. Escrow.com employs a rigorous verification process.

47. On May 3, 2022, Escrow.com confirmed to VPN that all parties had agreed to the terms for the Escrow.com Transaction.

48. On May 3, 2022, Intermediar confirmed that VPN's Broker payment for the Intermediar Transaction of $2,374,015 had been credited to VPN's Intermediar account. This confirmation was false.

49. On the same day of May 3, 2022, VPN initiated a withdrawal request via wire transfer of the $2,374,015, but Intermediar later notified VPN that the withdrawal was returned to Intermediar due to "invalid banking details at the receiving bank." This statement was a further distraction of the fact that the entire transaction was fraudulent.

50. On the same day of May 3, 2022, VPN provided Intermediar with additional banking details for the withdrawal to be processed.

**FIRST AMENDED COMPLAINT**
10

51. On the morning of May 4, 2022, Intermediar notified VPN that the banking details were now confirmed and that the $2,374,015 withdrawal wire was now being successfully processed to VPN's bank. This notification was false.

52. On the evening of May 4, 2022, after Intermediar's confirmation of the withdrawal that same morning, and after confirmation of the separate Escrow.com transaction which had verified Dikian's identity, VPN sent Dikian 6.27 Bitcoin, which was worth $250,000 at the time of sending, from VPN's Coinbase Pro Account, verified by the transaction hash: bc63bcff3eb86ae1dbfbf035ef51d6594d9d6d3b372d30f1038427e227c920aa.

53. Before sending the full amount, VPN sent a test transfer of .0001 Bitcoin, which Dikian confirmed receipt of via email, and verified by the transaction hash: 935dc7ef6f55ee0cd4a1159ef367324824ef1ccf239019154672e1630 cdaa81b.

54. On May 7, 2022, having still not received the wire withdrawal from Intermediar, VPN contacted Intermediar inquiring about the status.

55. On May 9, 2022, having received no response from Intermediar, VPN continued to contact Intermediar to inquire about the status of the wire withdrawal.

**FIRST AMENDED COMPLAINT**
11

56. On May 10, 2022, Du confirmed to VPN that 89.com had been successfully transferred into Du's Intermediar account. This was a lie.

57. On May 11, 2022, Dikian contacted VPN feigning ignorance of the entire 89.com transaction, insisting that it was "imposters/scammers" that had taken over Dikian's email address, and insisting that Dikian did not receive the Bitcoin that VPN sent. Notably, Dikian emailed VPN from the g.dikian@yahoo.com email address that VPN first emailed Dikian at in March and on various emails since that time.

58. VPN later checked the headers for the various g.dikian@yahoo.com emails, all of which used IP addresses assigned to Oath Holdings, Inc., the original name of the company created by Verizon to hold Yahoo's assets, after they were acquired by Verizon. The headers also specified that the emails "passed." As such, the emails did not appear to have been spoofed.

59. On May 12, 2022, Intermediar finally responded, and notified VPN that the transaction and all withdrawals were being put on hold due to Dikian requesting cancellation of the transaction.

60. According to Intermediar, the reason Dikian requested cancellation was that Dikian never received the $250,000 in Bitcoin.

61. VPN informed Intermediar that Dikian and Intermediar had no right to cancel the Intermediar Transaction, and that the Bitcoin was sent to Dikian at the address Dikian specified and the transaction completed as agreed.

62. On or around that same day of May 12, 2022, Dikian began withdrawing the 6.27 Bitcoin from the wallet VPN had sent the Bitcoin. The wallet was completely emptied by the following day, May 13, 2022.

63. On or around May 13, 2022, and continuing thereafter, VPN made several inquiries to Intermediar regarding the status of the Intermediar Transaction, informing them that Dikian had received and withdrew the Bitcoin sent to him, and demanding that Intermediar release VPN's commission funds.

64. Intermediar refused to release the funds and eventually completely shut off all communication with VPN.

65. VPN's investigation reveals that 89.com was never transferred from its underlying registrar.

**FIRST CLAIM FOR RELIEF**

**(FRAUD)**

66. VPN realleges and incorporates by reference the preceding paragraphs set forth above as if fully stated under this claim.

67. Defendants intentionally targeted VPN with their scam. Du, as either another fraudulently-created alias of Eitan Z., or else one of Dikian's co-

conspirators working on the fraud, contacted VPN seeking to buy a domain name that Du knew was owned by Dikian.

68. Dikian knew of VPN from past dealings, and concocted a scam, whereby VPN would be thrown off by the fact that VPN would be contacting Dikian at a known email address which was also verified by Escrow.com, and would engender VPN's trust.

69. From March 2022 through May 2022, Dikian committed fraud by intentionally and falsely making repeated false representations about the legitimacy of the Intermediar Transaction, including that 89.com had been successfully received by Du, that the transaction had been completed, that VPN's Broker funds had been wired by Intermediar to VPN's bank, that the Escrow.com transaction had been agreed to, verified, and approved, and by representing that Intermediar was a legitimate escrow service when in fact Intermediar is a fake website and fraudulent service that was used by Defendants, and upon information and belief, created and operated by Dikian, directly or indirectly, or a co-conspirator of Dikian, for the sole purpose of committing fraud against unsuspecting victims such as VPN.

70. That Dikian had produced verification and identity documents to pass Escrow.com verification, and that Dikian had sent a video to VPN showing the re-registrations of the 95 3N Domains, gave further assurance to VPN that

**FIRST AMENDED COMPLAINT**
14

the Intermediar Transaction was legitimate as Dikian provided proof of registrant administrative access to the domains, and was a catalyst for VPN wiring the Bitcoin to Dikian on May 4, 2022, just days after Escrow.com had confirmed Dikian's identity. These were also false representations of fact.

71. The false representations as described herein by Dikian were material, including the false representation that was sent from Intermediar on the morning of May 4, 2022, that informed VPN that its Broker proceeds had been wired to VPN's bank account. Indeed, it was later that same evening that VPN did make the $250,000 payment to Dikian.

72. At all relevant times, Defendants had knowledge of the falsity of their representations, including that Dikian had no intention of completing the transactions and including that Defendants knew Intermediar was set up as a fake and fraudulent website posing as a real online escrow service.

73. Forensic data, including the login history and internet protocol addresses for Dikian's g.dikian@yahoo.com email account, are consistent with Dikian using and accessing his account during the relevant period of the fraud and from the relevant locations where Dikian lives and travelled.

74. Furthermore, VPN is not the only victim of Dikian. Dikian defrauded at least one other unsuspecting domain name transactor immediately prior to scamming Plaintiff (the "Previous Victim").

**FIRST AMENDED COMPLAINT**
15

75. Dikian used, inter alia, the well-known reputation and domain portfolio of Dikian, the g.dikian@yahoo.com email address, and Intermediar to lure the Previous Victim into sending Defendant $20,000 in USD Coin cryptocurrency ("USDC") before DefendantDikian eventually shut off communications and failed to transfer the relevant domain name, similar to the playbook used against VPN.

76. The Previous Victim sent a demand to the g.dikian@yahoo.com email address in April 2022, in which he threatened legal action, and to which he initially received no response. However, Dikian responded to the email on December 7, 2022 from the same g.dikian@yahoo.com email address used to defraud both Plaintiff and the Previous Victim.

77. In his December 7, 2022 email, Dikian responded:

"Very interesting developments."
"Please provide me your phone number, I'd like to discuss/help resolve."

78. Dikian's response is similar to a response he wrote to VPN on May 11, 2022, in which he first claimed that VPN had been targeted by "imposters/scammers," and asked VPN to "Please provide your phone number so we can discuss further."

**FIRST AMENDED COMPLAINT**
16

79. Dikian's response to the Previous Victim proves conclusively that Dikian received such demand, which was sent to the g.dikian@yahoo.com email address in April 2022.

80. Dikian's response to that email some *eight months later* is telling – Dikian does not deny having received the USDC funds, and claims nothing about having been hacked. He cryptically responds to the demand and asks to speak with the Previous Victim. When the Previous Victim's attorney responds instead, Dikian ceases communicating.

81. As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, VPN has been injured in its business and property, causing VPN to suffer monetary damages in an amount not less than $250,000.

82. Because of Defendants' frauds as described herein, Defendants are liable to VPN for costs and disbursements, including reasonable attorneys' fees.

83. Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, VPN is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial

**FIRST AMENDED COMPLAINT**
17

and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, VPN respectfully requests judgment against Defendants as follows:

    i. Damages according to proof at trial, but in an amount not less than $250,000 that VPN sent to Dikian as part of Defendants' fraud;

    ii. A preliminary and permanent injunction freezing the <89.com> domain name;

    iii. Litigation expenses, including reasonable attorneys' fees, court costs, disbursement, and costs of collection;

    iv. Punitive damages in the sum of not less than $5,000,000 or an amount otherwise to be decided by a jury; and

    v. Such other and further relief as this Court deems just and proper.

Dated: October 2, 2023

                                                 Respectfully Submitted:

                                                 **LEWIS & LIN, LLC**

                                                  /s/ Brett Lewis
                                               Brett E. Lewis (*proc hac vice*)

                                                 **THE HOUCK FIRM**

JI-IN LEE HOUCK (SBN 280088)

*Attorneys for VPN.COM LLC*

## JURY TRIAL DEMAND

VPN demands trial by jury on all issues so triable.

Dated: October 2, 2023

                          Respectfully Submitted:

**LEWIS & LIN, LLC**

  /s/ Brett Lewis
Brett E. Lewis (*proc hac vice)*

**THE HOUCK FIRM**
JI-IN LEE HOUCK (SBN 280088)

*Attorneys for VPN.COM LLC*