Michael L. Rodenbaugh (SBN 179059)
Jonathan Frost (SBN 273189)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com
          jonathan@rodenbaugh.com
          docket@rodenbaugh.com

Attorneys for Defendant Eitan Z.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VPN.COM LLC,<br><br>Plaintiff,<br><br>v.<br><br>EITAN Z.,<br><br>Defendant. | Case No.: 2:22-cv-04453-AB-MAR<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT AND REQUEST FOR EXTENSION OF TIME TO FILE ANSWER & COUNTERCLAIMS**<br><br>Judge: Honorable Andre Birotte Jr.<br>Date:   November 17, 2023 at 10 a.m.<br>Courtroom: 7B |

Defendant Eitan Z., formerly sued herein as George Dikian ("Defendant"), by and through his undersigned counsel, hereby replies to the document styled "Plaintiff's Non-Opposition with Competing Proposed Order to Defendant's Motion for Various Relief", filed Oct. 27, 2023. (Dkt. #91).

**Prayer for Injunctive Relief**

Defendant has attempted to meet and confer several times with Plaintiff regarding the injunctive relief of "locking" Defendant's valuable 89.com property. Indeed, Plaintiff already has obtained that relief on its own, by Plaintiff's counsel demanding same from Defendant's domain registrar, knowing full well that the registrar would impose a lock which prevents Defendant from enjoying valuable property rights in his domain names until this matter is finally resolved.

In or about July 2022, Plaintiff's counsel provided a copy of the Plaintiff's then-operative Complaint (Dkt. #1) to the domain registrar, and demanded that all 96 of the domains listed in the Complaint be locked during the pendency of the action. *See* Declaration of Michael Rodenbaugh, filed herewith, #3, Exh. A:

> We have locked the domains pursuant to notification that they are subject to a dispute (Case No: 2:22-cv-4453 in the Central District of California). Absent documentation these domains are no longer a part of that dispute, we will not be unlocking the domains.

Thus, the registrar complied with the Plaintiff's unfounded demand, and locked all of the 96 domains listed in the original Complaint. *Id.* Plaintiff's counsel made this request even though Plaintiff makes no claim to ownership of any interest in any of the domains, and the Defendant's unfettered ownership of those domains is not disputed in any way by Plaintiff or otherwise.

Plaintiff knew that its demand would result in the registrar locking the Defendant's valuable domain properties, merely by creating a bogus cloud on title to them -- which could not be cleared without a court order. When a registrar "locks" or "freezes" a domain name, that property cannot be sold or otherwise transferred so long as the lock remains in place. *Id.*, #4. This is a significant loss of property rights to the domain owner. Indeed, in March 2021, Plaintiff's principal Michael Gargiulo wrote extensively on this very topic when one of Plaintiff's clients had the same thing happen to him upon filing of a complaint in India. *Id.*, #5, Exh. B, pp. 3, 5-6 (Michael

1 Gargiulo blog comments). Then, about 15 months later and before filing the
2 Complaint in this action, Gargiulo called Defendant and specifically threatened to do
3 exactly what Plaintiff has done: "But George, you need to understand this now.  We
4 open up the lawsuit, and it's not going to necessarily involve you directly, at least at
5 this time, all those names are going to be frozen." *Id.*, #6 ("those names are going to
6 be locked until this lawsuit is over").

7 And indeed, as threatened, Plaintiff's demand on the registrar has resulted in an
8 unjust, *de facto* prejudgment attachment of Defendant's valuable properties by the
9 Plaintiff. This despite Plaintiff not having even sought, much less obtained, any such
10 relief through legal process. This also despite Plaintiff not having any claim
11 whatsoever to any interest in Defendants' valuable domain name properties. This also
12 despite Plaintiff's expressed knowledge that such a lock makes the domains "in many
13 ways damaged goods" with "future values diminished" at least until the lock is
14 removed. *Id.,* #5, Exh. B, p. 6.

15 Plaintiff is able to consent to the unlocking of the 89.com domain, and the
16 registar will comply. This is what happened with the Defendant's other 95 domain
17 names listed in Plaintiff's Complaint. *Id.,* #7, Exh. A. But despite numerous
18 subsequent efforts to meet and confer, and the threat of filing a motion for sanctions
19 over this issue, the Plaintiff has refused to consent to the unlocking of 89.com. *Id.,* #7.
20 Therefore, Defendant is now requesting this Court to make clear in its Order on the
21 instant motion – as set forth in the Proposed Order submitted by Defendant – that
22 Plaintiff is not entitled to freeze, lock or otherwise exert any control over <89.com> at
23 its registrar and/or registry, either as preliminary injunctive relief or as permanent
24 injunctive relief.

25 Defendant admits as much in its "Non-opposition." (Dkt. 91, p. 2: "VPN does
26 not oppose the limited relief the Motion seeks."). However, the Proposed Order
27 submitted by Plaintiff (Dkt. 91-1) does not mention the "freezing" of 89.com, which
28 is specifically mentioned in the FAC's prayer for relief, and thus which is causing the

3 REPLY ISO DEFENDANT'S MOTION
TO DISMISS & REQUEST FOR EXTENSION

registrar to maintain a lock on Defendant's domain property. Therefore, Defendant's Proposed Order does not go nearly far enough to clear the bogus cloud on title that Plaintiff willfully has created at the registrar, by Plaintiff's illicit communications and unfounded prayer for relief. Defendant seeks a clear Order from the Court, which Defendant can show the registrar so that the registrar will lift the unwarranted and costly lock on Defendant's valuable 89.com domain name property, even though Plaintiff has refused to consent to same for more than six months. Therefore, Defendant requests the Court to adopt Defendant's Proposed Order on this point.

### Prayer for Punitive Damages

The FAC prayer for relief demands: "Punitive damages in the sum of not less than $5,000,000 or an amount otherwise to be decided by a jury." Defendant has argued that due process cannot support an award of greater than 4x the Plaintiff's claim for compensatory damages of $250,000 – which is $1,000,000. Defendant's Proposed Order thus requested an order stating: "The Court finds that Plaintiff's prayer for punitive damages is inconsistent with due process as a matter of law, to the extent it exceeds $1 million." Plaintiff "does not oppose the limited relief the Motion seeks." (Dkt. #91, p.2). However, Plaintiff's Proposed Order seeks an order that would strike only the words "not less than $5,000,000" from the prayer. (Dkt. #91-1).

That does not go nearly far enough, as it would leave Plaintiff's unlimited punitive damages claim in place, in violation of due process. Plaintiff admits as much, as Plaintiff does not oppose the relief Defendant seeks. Therefore, Defendant requests the Court make clear in its Order that Plaintiff's claim for punitive damages is limited to a maximum of $1 million, adopting Defendant's Proposed Order on this point.

### Time to File Answer and Counterclaims

Again, Plaintiff "does not oppose the relief the limited relief the Motion seeks." *Id.* However, Plaintiff's Proposed Order (Dkt. #91-1) provides only for an Answer to be filed within seven days. Whereas, Defendant's Proposed Order requests leave to file his Answer and Counterclaims within fourteen days. As Plaintiff does not oppose

such relief, Defendant requests that the Court adopt Defendant's Proposed Order on this point.

DATED: November 3, 2023       By:  /s/ Mike Rodenbaugh

Mike Rodenbaugh (SBN 179059)

*Attorneys for Defendant Eitan Z.*
*(formerly sued as George Dikian)*